Louis W. Ellin and Charles Siegel,

*vs.*

Consolidated Caribou Silver Mines, Inc., a corporation of the State of Delaware, Boris Pregel, Alexander Pregel and Samson Selig, as Directors of said Consolidated Caribou Silver Mines, Inc., and James Lee Kauffman, Otto L. Platz, William V. A. Waterman and Walter C. Wilson, as purported directors of said Consolidated Caribou Silver Mines, Inc.

*New Castle, July 7, 1949.*

*Clarence A. Southerland* and *Richard F. Corroon*, of the firm of Southerland, Berl & Potter, for plaintiffs.

*Howard Duane,* for defendants Consolidated Caribou Silver Mines, Inc., and others.

*James R. Morford,* of the firm of Marvel & Morford, for defendants James Lee Kauffman, and others.

SEITZ, Vice Chancellor. I am required to determine how many, if any, directors were elected at the defendant corporation's annual meeting of stockholders for 1949.

This is a petition under *Section 31 of the Corporation Law* to review the annual election of the board of directors of the defendant, Consolidated Caribou Silver Mines, Inc., a Delaware corporation. Plaintiffs are stockholders of the defendant corporation and they joined as defendants, along with the corporation, Boris Pregel, Alexander Pregel and Samson Selig as directors of defendant corporation, and James Lee Kauffman, Otto L. Platz, William V. A. Waterman and Walter C. Wilson as purported directors of defendant corporation.

Defendant corporation was incorporated July 15, 1946. Paragraph 10 of the by-laws provides that the holders of 50% of the outstanding stock shall constitute a quorum.

Paragraph 14 of the by-laws provides as follows:

"The number of directors which shall constitute the whole board shall be not less than three nor more than fifteen. The first board shall consist of three directors. Thereafter, within the limits above specified, the number of directors shall be determined by the stockholders at the annual meeting. The directors shall be elected at the annual meeting of the stockholders, and each director shall be elected to serve until his successor shall be elected and shall qualify. Directors need not be stockholders."

Under the certificate of incorporation and as the facts then existed, the preferred shares had no vote, the right to vote being exclusively in the common stockholders. Cumulative voting was not permitted.

The annual meeting for 1949 was duly called and held at the defendant corporation's offices in Wilmington, Delaware. At that time there were issued and outstanding 1,-023,750 shares of common stock entitled to vote at the annual meeting. There were represented at the annual meeting in person a total of 43,830 shares, and there were present represented by proxy a total of 799,722 shares, making a total of 843,552 shares represented at the meeting.

After some preliminary matters, the meeting proceeded to the election of directors. The defendants Kauffman, Platz, Waterman and Wilson were nominated for directors by persons opposed to the management, and the defendants Boris Pregel, Alexander Pregel and Samson Selig were nominated as management candidates. A vote was taken by ballot and the inspectors reported that 843,552 votes were cast, and that the management candidates had received 587,274 votes and the opposition 256,278 votes.

The chairman thereupon declared the management directors elected. The defendant Kauffman immediately took exception to the chairman's statement on the ground that he had not stated all of the gentlemen who had been elected directors of the company. After some further remarks, the defendant Selig—a management man—moved that the directors who should serve for the following year be limited to three, and that the three who received the highest number of votes should be the directors for the following year. The defendant Kauffman objected to this motion on the ground that it was out of order, since the election of directors had been completed. The chairman seconded the motion and called attention to Paragraph 14 of the by-laws and stated that the company had always had three directors. He further said "If the Annual Meeting would like to raise the

number of directors within the limit specified, we have to have a vote to that effect."[1] Defendant Kauffman made no reply to this statement, but challenged the right of the management proxy holders, Messrs. Gray and Herman, to vote on this motion on the ground that the proxies gave them no power to do so. After unsuccessfully moving for the adjournment of the meeting, several of the opposition members retired from the meeting. The motion to limit the directors to three was then put and carried by a vote of 587,274 to 0. The meeting then adjourned.

The management, of course, contends that the three management candidates were the only directors elected, while the opposition group contends that the three management and the four opposition candidates were all elected. The opposition group contends that the purported action taken after the casting of the vote for the directors whereby the meeting purported to limit the number of directors to the three persons receiving the highest number of votes was invalid. They say the motion was out of order, was invalidly made, invalidly seconded, was not the action of the stockholders' meeting and came too late. The opposition group further contends that the management proxy holders, having exercised their powers of attorney by casting their ballots for three directors, had no legal power subsequently to vote to limit the directors elected to the three receiving the highest vote. Finally, the opposition group contends that the third sentence of Paragraph 14 of the by-laws purporting to confer upon the stockholders at each annual meeting the power to fix the number of directors between three and fifteen is invalid under *Sections* 2(6) and 9 of the *General*

---

[1] The use of the word "raise" was inaccurate in the light of the language of the third sentence of Paragraph 14 of the by-laws. I say this because implicit in the use of the word "raise" was the assumption that the number of directors remained as fixed in previous years unless changed by the stockholders. It is evident from Paragraph 14 of the by-laws that each year the stockholders must determine the number of directors to be elected.

*Corporation Law.* The management group naturally denies the validity of all of the opposition's contentions.

Since it is the crux of the case, let us analyze Paragraph 14 of the by-laws. As applied to the facts surrounding the 1949 annual meeting, Paragraph 14 of the by-laws provided for the election of not less than three, nor more than fifteen directors, and it further provided that "the number of directors shall be determined by the stockholders at the annual meeting." At the oral argument counsel for the opposition conceded that the quoted language of the by-law meant that at the annual meeting stockholders present in person or by proxy holding a majority of the stock there represented would be the ones to determine the number of directors to be elected.[2]

Since this by-law contemplates that the determination of the number of directors to be elected is to be made at the annual meeting, it is obvious that evidence of matters occurring before the annual meeting, e.g., management's solicitations of proxies for the election of three directors, would not be such a determination as is called for in Paragraph 14 of the by-laws. In the light of the way this by-law is drafted, it would be expected that prior to the vote for the election of directors some formal vote would be taken to determine the number of directors to be elected within the range of three to fifteen. It is conceded that no such formal action was here taken prior to the casting of the votes for the election of directors.

We thus have the situation where no formal vote was taken to fix the number of directors to be elected prior to the casting of the vote for the election of directors. However, stockholders present in person or by proxy, and holding more than a majority of all of the stock voted at the meeting, voted for the election of the three management directors. The management contends that this constituted

[2] For purposes of this argument, I am assuming the validity of the third sentence of Paragraph 14 of the by-laws.

a determination by a majority of the stockholders that the number of directors for the forthcoming year should be three. The opposition contends that such action should not be deemed a compliance with Paragraph 14 of the by-laws because the theory of the democratic process is such that the question of the determination of the number of directors to be elected should have been formally presented to the meeting. They say that in this way the opposition group would have been given the opportunity to demonstrate the desirability of giving their group representation on the board.

Certain it is, of course, that the opposition candidates for directors were not validly elected. This is so because there was no determination by the holders of a majority of the stock present in person or by proxy that there should be seven directors, since concededly only the three management directors received the vote of such a majority,[3] and there was no formal action, prior to the vote, fixing the number of directors. Counsel for the opposition group at the oral argument seemed to concede that, assuming the validity of by-law 14, the opposition directors were not elected. He suggested that since there was no formal action under Paragraph 14 of the by-laws, the entire election was invalid, and a new meeting should perhaps be held.

Leaving aside the question of the validity of the action taken subsequent to the vote for the election of directors, and assuming the validity of Paragraph 14 of the by-laws, I am called upon to decide whether the casting of a majority of the shares present in favor of each of the three management candidates constituted a sufficient compliance with Paragraph 14 of the by-laws authorizing the holders of a majority of the stock present to determine the number of directors to be elected.

---

[3] Indeed, the proxies under which the management were operating only authorized the holders thereof to vote for the election of three directors. *Gow v. Consolidated Copper Mines, Corp.*, 19 *Del. Ch.* 172, 165 *A.* 136 involved unrestricted proxies.

I believe it reasonable to view the casting of the vote by such a majority for each of the three management directors as a determination under Paragraph 14 of the by-laws that there should be but three directors. Obviously, the majority determined that there should be at least three directors when they voted for such number. There could not legally be less. Consequently, we need only ask whether from the act of voting for but three directors it may reasonably be inferred that they determined that three should be the limit. I think it fair to so infer because the management —representing the majority—nominated and voted for but three candidates. The opposition candidates were just that, and the voters so understood. The realities point to a practical determination by the majority that three directors were to be elected. Since there is no evidence from which it can be inferred that such majority determined that there should be more than three directors, it follows that the four opposition directors, having each received less than a majority of such votes, can only be considered as having been candidates for the three directorships.

The provisions of by-law 14 dealing with the fixing of the number of directors is not to be confused with the provisions of by-law 4 which provide that directors are to be elected by a plurality vote. It is quite conceivable that at some elections the stockholder vote would not show that the same majority of such stock was voted for any particular number of directors. Such a possibility, of course, demonstrates the desirability of implementing by-law 14 by taking a formal vote with respect to the number of directors to be elected. However, since the record here clearly demonstrates that the holders of a majority of the stock present at the meeting determined by their votes that there should only be three directors elected, I think it would be undesirable to require the holding of a new meeting in order that the formality of determining the number of directors should precede the vote thereon. My practical conclusion is reinforced by the fact that after the election of the directors the hold-

ers of a majority of the stock there present, being also a majority of all the outstanding voting stock, voted in favor of a resolution limiting the number of directors for the year to three. By mentioning this resolution, I am not passing upon its validity, but I think I am entitled to use it in resolving the practical problem as to whether or not a new election should be called. The conscious action of the majority stockholders shows the futility of calling a new election. Indeed, the opposition at no time prior to the vote asked for representation on the board. At no time did they ask for a formal vote on the number of directors to be elected.

I, therefore, decide that the holders of a majority of the stock entitled to vote at the 1949 stockholders' meeting determined that the number of directors to be elected for the forthcoming year should be three. The three candidates receiving the largest number of votes were the management candidates, namely, Boris and Alexander Pregel and Samson Selig.

Counsel for the opposition suggests that the third sentence in Paragraph 14 of the by-laws by purporting to confer upon the stockholders the power to fix the number of directors is invalid under *Sections* 2 (6) and 9 of the *General Corporation Law.* Let us consider the objection without determining whether such invalidity would aid the opposition's position here.

*Section* 9 of the *General Corporation Law,* insofar as pertinent, provides that

"The number of directors which shall constitute the whole board shall be such as from time to time shall be fixed by, or in the manner provided in, the by-laws, but in no case shall the number be less than three."

*Section* 2 (6) of the *General Corporation Law* gives Delaware corporations the power "To make by-laws * * * fixing and altering the number of its directors for the management of its property, * * *."

The argument of the opposition is that the stockholders may not fix the number of directors unless they do so by the adoption of a by-law. Since *Section* 9 of the *General Corporation Law* explicitly states that the number of directors may be fixed in the manner provided in the by-laws, the opposition is forced to explain why this language does not constitute authorization for the language of the third sentence of Paragraph 14 of the by-laws. They suggest that this language in *Section* 9 does not allow a by-law delegation as to the number of directors, since they urge that *Section* 9 must be read in the light of *Section* 2 (6) which they say limits the scope of a by-law provision on this subject to one fixing and altering the number of its directors. The short answer to the argument of the opposition on this point is that *Section* 9 explicitly authorizes the creation of a by-law providing for the manner in which the number of directors to be elected shall be fixed. The defendant corporation's by-law provides that the stockholders shall determine the number to be elected at each annual meeting. The fixation of such a method for determining the number of directors seems to me to be an entirely reasonable exercise of the explicit power granted in *Section* 9; otherwise, the language of *Section* 9 would appear to be meaningless. The language of *Section* 2 (6) of the *General Corporation Law* is a general power and is not to be read as here limiting the explicit language of *Section* 9, which reasonably construed, explicitly authorizes the adoption of a by-law provision which fixes a method of determining the number of directors to be elected. Such was the course followed here.

I, therefore, conclude that the third sentence of Paragraph 14 of the by-laws is not invalid under *Sections* 2 (6) *and* 9 of the *General Corporation Law,* but on the contrary is a reasonable implementation of the power provided in *Section* 9.

It follows from my conclusions herein that the manage-

ment directors, Boris Pregel, Alexander Pregel and Samson Selig, were the duly elected and the only directors elected at the 1949 stockholders' meeting here reviewed. While interesting, it becomes unnecessary to consider the legal effect of the action taken subsequent to the vote for the election of directors.

.An order accordingly will be entered on notice.