William R. Brexxah, Jr., J.
Petitioner, a minority stockholder and former director of the Valley National Bank of Long Island, seeks an order under section 25 of the General Corporation Law setting aside the election of directors of that institution which took place at its annual meeting of shareholders on January 10, 1961.
When stripped of the campaign oratory which sometimes invades corporate as well as public elections, the papers reveal but a single legal attack. It is asserted that the management of the bank misled the proxy-giving stockholders as to the number of directors to be elected, and thereafter drastically reduced such number, thus depriving the minority of the representation it might have had on the board through the exercise of the cumulative voting privilege, had the number of directors remained the same.
The pertinent facts are not in dispute. The bank had a board of directors consisting respectively of 15 persons in 1958, 14 persons in 1959 and 14 persons in 1960. At the 1961 meeting, however, the number of directors to be elected was fixed, by majority of the votes cast in person and by proxy, at seven, or exactly one-half the number elected in the two years immediately preceding the meeting. The balloting was conducted in orderly fashion and the slate of seven candidates proposed by management was elected. On the date of the meeting the bank had authorized, issued and outstanding, a total of 230,840 shares, of which 219,469 were present at the meeting in person or by proxy. In addition to the seven men nominated by management, six of whom received 202,721 votes each, and the other of whom received 204,289 votes, one Morris A. Marks was nominated by the minority group in which petitioner was an adventurer and Marks received 115,668 votes. The notice of annual meeting and the form of proxy mailed by management to the stockholders on December 28, 1960 made no affirmative disclosure or representation as to the number of directors to be elected. Both forms, however, were couched in terms used in previous annual meetings and acquainted the stockholders with the object of the meeting, i.e.: “ the election of directors ”.
*386 Though not raised by motion or defense, the court has nevertheless investigated the jurisdictional question and is satisfied that the powers granted by section 25 of the General Corporation Law are applicable to national banking associations as they do not conflict with any Federal statute. (See Lewis v. Fidelity Co., 292 U. S. 559.)
The statutory materials are clear. The National Bank Act guarantees to shareholders of national banks the right of cumulative voting in all elections of directors. Section 61 of title 12 of the United States Code provides in pertinent part as follows: “In all elections of directors, each shareholder shall have the right to vote the number of shares owned by him for as many persons as there are directors to be elected, or to cumulate such shares and give one candidate as many votes as the number of directors multiplied by the number of his shares shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and in deciding all other questions at meetings of shareholders, each shareholder shall be entitled to one vote on each share of stock held by him * *. Shareholders may vote by proxies duly authorized in writing; but no officer, clerk, teller, or bookkeeper of such bank shall act as proxy ”.
The Articles of Association of the bank are likewise free from ambiguity, and provide in paragraph Third: “ The Board of Directors of this Association shall consist of not less than five nor more than twenty-five shareholders. At any meeting of the shareholders held for the purpose of electing Directors, or changing the number thereof, the number of Directors may be determined by a majority of the votes cast by the shareholders in person or proxy. A majority of the Board of Directors shall be necessary to constitute a quorum for the transaction of business at any Directors’ meeting.” (Emphasis supplied.)
Finally, among the instructions issued by the Comptroller of the Currency of the United States, the administrative officer who has power of supervision over national banking associations, there is one dealing with annual shareholders’ meetings which provides in pertinent part as follows: “If the articles provide for a variable number of directors, the shareholders should first adopt a resolution fixing the number for the ensuing year, because, with the cumulative voting privilege, it would not be possible to know how many votes could be cast by each shareholder until the number of directors to be chosen is fixed. After the list of shareholders present in person and represented by proxies has been completed, and after the number of directors to be elected has been fixed, the meeting should proceed to the *387 election of directors. Since only shareholders can elect directors, the full number of directors decided upon should be elected at the annual meeting.” (Emphasis supplied.)
Thus it is clearly established by statute, charter and regulation that the stockholders were entitled to vote cumulatively, that the number of directors could be fixed by majority vote at any number between 5 and 25, and that the resolution, fixing the number of directors to be elected at the annual meeting, should be adopted prior to the election of persons to fill the seats on the board thus created. In fact, it is difficult to perceive how the election could be conducted in any other manner.
Petitioner argues that the sudden drastic reduction in the number of directors was arbitrary, in bad faith, without justification and solely for the purpose of nullifying and defeating the cumulative voting rights of the shareholders, to ‘ ‘ freeze out ” any representation of the minority shareholders and to assure the controlling group of a “ free hand”. Assuming, without deciding, that all of these accusations are true, the petitioner must nevertheless fail. Such charges are addressed exclusively to the motives of the majority stockholders and not to any legal misbehavior. In effect, petitioner is accusing management of a conspiracy to abide by the law and to utilize to the fullest extent the procedures authorized by law to accomplish a purpose with which petitioner is not in sympathy. Characterizing the utilization of legal corporate election machinery as a “ scheme ” or a “ plot ” adds nothing to the charge. No affirmative misrepresentations are alleged, and the notice as well as the form of proxy were in accord with the instructions issued by the Comptroller which provide for a ‘ ‘ brief notice of the time, place and purpose of the meeting ’ ’. It might also be noted that the instructions of the Comptroller require that the notice of meeting contain more specific data with respect to any proposal which would result in an amendment of the Articles of Association. Thus, if the articles provided for a fixed rather than a variable number of directors, any attempt to change the number would have to have been accomplished by such an amendment, in which event the notice would have to have given a clear outline of the proposal. Here, however, there was no necessity for an amendment to the articles since the number of directors proposed was within the minimum and maximum variable number set forth in the articles. The notice was therefore sufficient.
The resolution fixing the number of directors at seven was properly before the meeting, validly adopted by majority vote, and binding upon the minority as well as the majority stock *388 holders. The wisdom, of the resolution, while perhaps a proper subject of bank supervisory scrutiny insofar as its impact upon the welfare of the bank is concerned, is not before the court. We are here concerned only with the rights of minority stockholders under the law. Their rights were to participate on an equal vote basis in determining the number of directors to be elected, and to vote cumulatively on the persons to be elected. They were accorded both rights. The petition is accordingly dismissed. (See Matter of Fleetwood Bank, 283 N. Y. 157 ; Josephson v. First Nat. Bank of Bordentown, 42 N. J. Super. 461.)