Victor A. PAULEK, for himself and all other stockholders in the H. H. Ditch Company similarly situated, and in behalf of the H. H. Ditch Company, a corporation, Plaintiffs-Appellants,

v.

Arthur ISGAR et al., Defendants-Appellees.

No. 75–421.

Colorado Court of Appeals,
Div. III.

June 3, 1976.

Al H. Haas, Durango, for plaintiffs-appellants.

McKelvey & McKelvey, R. Franklin McKelvey, LaVerne H. McKelvey, Christopher Jervis Webb, Durango, for defendants-appellees.

BERMAN, Judge.

Plaintiff, Victor A. Paulek, commenced this action for himself and all other similarly situated stockholders in the H.H. Ditch Co. (H.H.) to restrain the defendant officers, directors, and shareholders from proceeding to consolidate the Short Line Ditch Co. (Short Line) with H.H. From an adverse judgment in the trial court, plaintiffs appeal. We affirm.

At a special meeting of the shareholders of H.H., 56% of the shares represented at the meeting voted to consolidate the two ditch companies under the existing articles of incorporation and bylaws of H.H. At the next annual meeting of the shareholders, an amendment to the minutes of the special meeting was approved, again by majority vote. The amendment provided that as part of the consolidation Short Line was to pay a proportionate share of any indebtedness of H.H. and that all property of Short Line was to become the property of H.H.

Paulek first contends the trial court erred in its holding that series D stock of H.H. could be issued in exchange for water rights and other property of Short Line without amending its bylaws. The bylaws provide as follows:

"The capital stock of this company shall be classed in three series as follows: A series, B series, and C series, and shall be assessable for the purposes stated in the Articles of Incorporation and these By-Laws."

However, the articles of incorporation authorize the issuance of 8,000 shares of par value stock divided into four series: A, B, C, and D. Each series of stock was to be issued "in the ratio of 80 shares of stock for each cubic foot [of water] per second of time" conveyed to the company. The articles provide that series A, B, and C would be issued to the owners of rights and interests in the H.H. Ditch and subsequent enlargements, but that the D series of stock "shall be placed in the treasury of the Company to be issued at the ratio of 80 shares for each cubic foot of water per second of time . . . upon conveyance of such water to this Company by the owner thereof. . . ."

The trial court held that there was a conflict or inconsistency between the articles of incorporation and the bylaws relating to the series D stock, and concluded that the articles controlled. Paulek however contends that the series D stock could not be issued until the bylaws were amend-

ed, pursuant to the bylaw provision permitting amendment, by a two-thirds vote of the stock represented at a meeting of the shareholders held to authorize the issuance of the series D stock.

■ Paulek's contention ignores the fact that the articles of H.H. also provide that the board of directors, rather than shareholders, shall have the power to make the bylaws. *See* § 7–5–109, C.R.S. 1973. Thus, the provision in the bylaws attempting to give this power to the shareholders is in conflict with the articles of incorporation. Where bylaws conflict with the articles of incorporation, the articles of incorporation control and the bylaws in conflict are void. *See* § 7–5–109, C.R.S. 1973; *Manufacturers' Exhibition Bldg. Co. v. Landay,* 219 Ill. 168, 76 N.E. 146; 8 *W. Fletcher, Cyclopedia of the Law of Private Corporations* § 4190 (M. Wolf rev. 1966).

■ Therefore, even assuming *arguendo,* that the bylaws had to be amended before the series D stock could be issued, it was the directors, and not the stockholders, who had the authority to amend. *See Somers v. AAA Temporary Services, Inc.,* 5 Ill.App.3d 931, 284 N.E.2d 462. H.H. has five directors. Three of the five voted for either the consolidation or the amendment to the consolidation, which implicitly indicates approval for the consolidation itself. And, four of the five directors thereafter voted to seek the change in point of diversion necessary to implement the consolidation. In the instant case, the actions and conduct of a majority of the directors constitutes an implied repeal or amendment, if such an amendment were necessary, of the provision of the bylaws providing for three series of stock. 8 *W. Fletcher, supra,* § 4183; 18 *C.J.S. Corporations* § 188; *see also Magnus v. Magnus 'Organ Corp.,* 71 N.J.Super. 363, 177 A.2d 55.

■ Furthermore, although a provision in the bylaws is a contract between the corporation and shareholders and among the shareholders, *Model Land & Irrigation Co. v. Madsen,* 87 Colo. 166, 285 P. 1100; *Laybourn v. Wrape,* 72 Colo. 339,

211 P. 367, we do not view the above-quoted provision of the bylaws as precluding the issuance of the series D stock. The bylaw provision does not state there shall *only* be three series of stock, nor does it expressly preclude the issuance of series D stock without authorization in the bylaws. And, as noted, to the extent the bylaw provision and the articles of incorporation are inconsistent, the bylaw provision is void, as the trial court held.

■ The corporation, by statute, has the power to create and issue the number of shares stated in its articles. Section 7–4–101(1), C.R.S. 1973. The H.H. articles of incorporation provide that the directors shall perform all acts necessary to carry out the objects and purposes for which the company was formed. *See also* § 7–5–101, C.R.S. 1973. Thus, the directors, acting for the corporation, as they are empowered to do by the articles, have the power to issue the series D stock as authorized by the articles. 2 *W. Fletcher, Cyclopedia of the Law of Private Corporations* § 523 (M. Wolf & E. Comiskey rev. 1969).

■ Also, we find no merit in Paulek's contention that since H.H. received no additional water for its existing stockholders, there was no consideration for the issuance of the series D stock. The series D stock was to be issued in the precise ratio required by the articles of incorporation (80 shares for each cubic foot of water per second conveyed to the corporation). The shareholders, by approving the consolidation "under the *present* articles of incorporation," (emphasis added) approved the issuance of the stock in exchange for the designated water rights. Such property is a valid consideration for the payment of shares. Section 7–4–105(1), C.R.S. 1973; *see McIntosh v. Fraser-Arapaho Ranch, Inc.,* 169 Colo. 414, 457 P.2d 385. Moreover, H.H. received additional consideration above that required by the articles, to wit: The conveyance of the personal property of Short Line and the assumption, by the owners of the water in Short Line, of a proportionate share of any indebtedness owed by H.H.

Finally, Paulek contends that the trial court erred in determining that the issuance of series D stock to members of Short Line was properly authorized by the stockholders of H.H. We find no error in that determination. The consolidation was approved at a special meeting of the shareholders of H.H. called, pursuant to notice, for the purpose of voting on the proposed consolidation. The resolution approved by the shareholders at that meeting provided for consolidation under the existing articles of incorporation of H.H. And, under these articles, *only* the series D stock could have been issued for the transfer of the water rights from Short Line to H.H., since series A, B, and C could be issued only to the owners of rights and interests in the H.H. Ditch, and subsequent enlargments. Thus, approval of the consolidation was, in effect, authorization for the issuance of the series D stock.

Judgment affirmed.

PIERCE and SMITH, JJ., concur.