**Katrina L. ANDERSON, f/k/a Katrina Lee Gibson, Petitioner,**

v.

**Cindy S. WATSON, Respondent.**

**No. 96SC505.**

Supreme Court of Colorado,
En Banc.

Feb. 23, 1998.

Cook & Lee, P.C., Stephen H. Cook, Deborah Kirschman, Boulder, for Petitioner.

White & Steele, P.C., John M. Lebsack, Denver, for Respondent.

Kidneigh & Kaufman, P.C., Stephen C. Kaufman, Denver, for Amicus Curiae the Colorado Trial Lawyers Association.

Patterson & Nuss, P.C., Craig S. Nuss, Franklin D. Patterson, Englewood, for Amicus Curiae Colorado Defense Lawyers Association.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in *Anderson v. Watson*, 929 P.2d 6 (Colo.App.1996), to determine whether the court of appeals correctly upheld the trial court's entry of a jury verdict in this automobile accident case. The respondent, Cindy S. Watson (Watson), the defendant in the trial court, conceded that she was at fault in causing the accident. In turn, Katrina L. Anderson (Anderson), the petitioner, who was injured as a result of the collision, admitted that she was not wearing an available seat belt at the time of the accident. The trial court instructed the jury on Watson's statutory defense that Anderson failed to mitigate her pain and suffering damages by not using her seat belt at the time of the accident. *See* § 42–4–237(7), 11 C.R.S. (1997) (the seat belt defense). Although the jury awarded Anderson $640 in economic losses[1]—lost wages not covered by Anderson's own insurance carrier—it did not award Anderson compensation for non-economic damages (pain and suffering and loss of enjoyment of life). The trial court denied Anderson's motion for a new trial. Anderson appealed, arguing that, given the lack of evidence presented by Watson on the relationship between Anderson's injuries and her failure to wear a seat belt, the trial court erroneously instructed the jury on the seat belt defense. The court of appeals affirmed the trial court's decision.[2] We now affirm the judgment of the court of appeals on different grounds.

I.

The operative facts are not in dispute. On the evening of October 24, 1992, Anderson was driving westbound through an intersection at Colorado Boulevard and Hampden Avenue where she had a green light. Watson, simultaneously driving southbound, drove through a red light and entered that intersection just in front of Anderson's car. As a result, the front of Anderson's car hit the side of Watson's car. Anderson was taken to the emergency room at Swedish Medical Hospital, treated for cervical spine strain, and released later that evening. The hospital physician instructed Anderson to apply ice packs and heating pads and to take Tylenol for pain. Anderson was told that if the pain persisted, she should consult her family physician, which she did shortly thereafter. Anderson's physician referred her to an orthopedic specialist. Anderson underwent physical therapy and ultimately had shoulder surgery.

Although Watson stipulated that her negligence caused the accident, she contested the nature and extent of Anderson's injuries. Thus, the issues to be determined at trial were the nature and extent of Anderson's injuries and the concomitant damages, if any. At the time of trial, Anderson claimed that she was still suffering from lower back, shoulder, and neck pain as a result of her accident-related injuries and that her lifestyle was severely affected by that pain.

Watson raised, as an affirmative defense, Anderson's failure to mitigate her damages by not using an available seat belt at the time of the accident. Pursuant to section 42–4–237, 11 C.R.S. (1997), entitled "Safety belt systems—mandatory use—exemptions—pen-

---

1. The parties stipulated that $640 was the amount of economic damages (lost wages) in excess of the damages reimbursed to Anderson by Anderson's no-fault insurance under the Colorado Auto Accident Reparations Act, sections 10–4–701 to –725, 3 C.R.S. (1997).

2. We granted certiorari on the following issue:

> Whether a defendant who asserts a seat belt defense is required to present competent evidence to prove a causal relationship between the plaintiff's non-use of a seat belt, and the occurrence or enhancement of the plaintiff's injuries.

alty," failure to wear a seat belt is admissible evidence if the accident victim seeks an award for pain and suffering. That section provides, in relevant part, as follows:

> (7) Evidence of failure to comply with the requirement of subsection (2) of this section [requiring that drivers and front-seat passengers wear seat belts] shall be admissible to mitigate damages with respect to any person who was involved in a motor accident and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident. Such mitigation shall be limited to awards for pain and suffering and shall not be used for limiting recovery of economic loss and medical payments.

§ 42–4–237(7), 11 C.R.S. (1997).

The evidence at trial on the relationship between Anderson's injuries and her failure to wear a seat belt was very limited. Watson did not provide any evidence by way of direct medical or expert testimony on this subject.[3] Moreover, Watson did not cross-examine Anderson's medical witnesses (Anderson's treating physicians)—with one exception [4]— regarding whether her injuries were exacerbated by her failure to wear a seat belt. Similarly, Anderson's experts did not testify on the causal relationship between her non-use of a safety belt and injuries.

On appeal, Watson relied on Anderson's testimony to support her position that there was sufficient evidence to allow the jury to be instructed on the seat belt defense. Anderson testified on direct examination as follows:

Q: What happened to you inside the vehicle during the collision?

Anderson: I know that I hit my head because my head hurt, there was a bump there, but—I mean, there was—and I hit my knees up against the dashboard. And I know that I braced the steering wheel and once the car—I did not know where her car went after she hit me because I[was] still really shaken up and I was looking forward. It seemed like the brakes wouldn't go in my car and I kept hitting the brake and the car kept just kind of kept slowly creeping.

. . . .

Q: When the ambulance personnel first came to the car did they ask you any questions?

Anderson: Yes, they asked me what hurts. I told them that my neck and my shoulder, my back, my knees hurt because I hit them in [sic] the dashboard. I also told them that my stomach had hurt and I didn't know if it was because I just was upset, but at that point they had cut my shirt off because they were afraid of internal damages.

. . . .

3. However, Watson's attorney did ask Watson's orthopedic expert, Dr. Barry Lindenbaum, whether he had studied the effect of wearing a seat belt or not wearing a seat belt on automobile accident injuries. Anderson's counsel objected, arguing that Dr. Lindenbaum had not been qualified to render opinions on the "biomechanical bases of injuries" and that he had not been notified, via Dr. Lindenbaum's report, of this line of testimony. After the trial court asked Watson's counsel about notice, Watson's counsel stated that he had no further questions of his witness.

4. On one occasion, Watson's counsel attempted to elicit information on cross-examination from one of Anderson's treating physicians, Doctor Robert R. Rokicki, an orthopedic surgeon subspecializing in general orthopedics. The following colloquy took place:

> Q: [cross-examination] Now, Doctor, you testified that the adhesions and tendinitis that were in her shoulder you assumed they were related to the automobile accident and some type of bracing; is that correct?
> Dr. Rokicki: That is correct.
> Q: Would you agree with me, Doctor, that if a person is wearing their seat belt, they don't have to brace themself [sic] quite as hard in an accident?
> Dr. Rokicki: No.

At this juncture, Anderson's counsel objected on grounds of foundation and the trial court ruled that some foundation had to be laid for this line of questioning to continue. In response, Watson's counsel stated that he would move on and this topic was not pursued. Instead, Watson's counsel started questioning Dr. Rokicki about the shoulder surgery that he performed on Anderson. Thus, Dr. Rokicki's testimony negated Watson's theory that Anderson was injured by attempting to brace herself and provided no other information about the relationship of Anderson's injuries to the non-use of her seat belt.

Q: What did you tell [the doctors and nurses at the hospital] when they asked you where you were hurt?

Anderson: I told them that my back hurt, my shoulders hurt, my head hurt, my neck hurt, my knees hurt but I was sure they were okay because I just banged them and I could—you know, I could move them a little bit under the table.

Q: Were there any injuries that you were more concerned about at that time?

Anderson: I was really concerned about my back and I would say my back and my neck mostly. My shoulders I was a little bit concerned about because I was concerned that I had jammed something.

Q: Were you concerned about the bump on your head?

Anderson: Not really, everything else hurt at times worse than my head, I had a little headache.

In its instructions to the jury, the trial court stated as follows: [5]

If you find in favor of the plaintiff, Katrina Lee Anderson, and that she is entitled to actual damages, then you must consider whether the affirmative defense of plaintiff's failure to mitigate or minimize pain and suffering damages has been proved. One claiming damages for personal injuries has the duty to take such reasonable steps as are reasonable under the circumstances to mitigate or minimize those damages. Any damages resulting from a failure to take such reasonable steps cannot be awarded.

This defense is proved if you find all of the following:

1. The plaintiff failed to wear her seat belt;

2. Such failure caused the plaintiff to incur more pain and suffering than she otherwise would have; and

3. The amount of damages caused by such failure.[6]

In addition, the trial court instructed the jury that Watson had the burden of proving any affirmative defense by the preponderance of the evidence.

The jury returned a verdict form in which it found that: (1) Anderson had incurred injuries, damages, or losses; (2) Watson was negligent; (3) Anderson sustained zero damages for non-economic losses (excluding physical impairment or disfigurement); (4) Anderson sustained $640 in economic losses; and (5) Anderson sustained zero damages for physical impairment or disfigurement. After the trial court denied her motion for a new trial, Anderson appealed and the court of appeals affirmed the trial court.

## II.

Although we agree with the result reached by the court of appeals, we do not agree with its reasoning. The court of appeals held that once Watson established an inference that Anderson's failure to wear a seat belt increased her pain and suffering, there was no need to present more specific evidence to the jury and the jury could be instructed on the seat belt defense. The court of appeals explained:

Thus, provided there is evidence from which it can be inferred with reasonable probability that pain and suffering will occur because of failure to wear a seat belt, it is not necessary that defendant introduce specific evidence that failure to wear a seat belt *caused* plaintiff to incur more pain and suffering than she otherwise would have.

*Anderson,* 929 P.2d at 8 (emphasis in original). For purposes of this opinion, we will refer to the court of appeals' analysis as the "inference standard."

Applying the "inference standard," the court of appeals found Anderson's testimony that "she banged her knees, head and chest as a result of the collision" was "sufficient for the jury to infer that [Anderson's] failure to

---

5. Anderson moved the trial court for an order in limine precluding the seat belt defense. The motion was denied.

6. The trial court instructed the jury based on a pattern jury instruction for affirmative defenses—failure to mitigate. *See 1 CJI–Civ.3d,* No. 5:2 (1988). Since then, the Colorado Jury Instructions have been amended to include a specific pattern instruction for the seat belt defense. *See 2 CJI–Civ.3d,* No. 5:2(A) (1997 Supp.).

wear a seat belt contributed to her pain and suffering." *Id.* at 9.

In reaching this conclusion, the court of appeals relied on several of its earlier decisions, *Lawson v. Safeway, Inc.*, 878 P.2d 127 (Colo.App.1994); *Askew v. Gerace*, 851 P.2d 199 (Colo.App.1992); *Morgan v. Board of Water Works*, 837 P.2d 300 (Colo.App.1992); *Sours v. Goodrich*, 674 P.2d 995 (Colo.App. 1983).

In *Askew*, a panel of the court of appeals considered the very issue presented here. The plaintiffs, a husband and wife, were injured in an automobile accident. Although the husband testified that he was wearing a seat belt, the investigating officer who was at the scene of the accident testified that the husband told him that he was not wearing a seat belt. Neither party presented medical evidence regarding whether the husband's alleged failure to wear a seat belt contributed to his pain and suffering. Over the husband's objection, the trial court permitted the statutory seat belt defense to go to the jury. The jury did not award him any pain and suffering damages. On appeal, the court of appeals held that the trial court properly permitted the seat belt defense because medical evidence was not required. The *Askew* court stated:

> Medical testimony is not required to prove pain and suffering damages. Accordingly, since a plaintiff is under no requirement to produce medical testimony on pain and suffering, it would not be equitable to require a defendant to submit medical testimony to refute a claim for pain and suffering. Thus, we conclude that under § 42-4-236(7), a defendant is not required to present medical evidence to show that the failure to wear a seat belt contributed to a plaintiff's pain and suffering.

*Askew*, 851 P.2d at 202 (citation omitted).

The *Askew* court relied heavily on *Sours*, 674 P.2d 995, which concerned permanency of injury rather than the seat belt defense. In *Sours*, an automobile accident victim appealed the trial court's ruling declining to instruct the jury on the permanency of his injuries. At trial, the plaintiff testified that he had been suffering pain for three years as a result of the automobile accident injuries. There was no medical evidence introduced by either party, however, on the permanency of plaintiff's injuries. The *Sours* court instructed that "medical testimony is not required to establish future pain or associated injury." *Sours*, 674 P.2d at 996 (citing *CeBuzz, Inc. v. Sniderman*, 171 Colo. 246, 466 P.2d 457 (1970)). Instead, the *Sours* court explained, the jury could infer that the future pain was permanent from the same evidence "that would sustain an inference that plaintiff's pain would continue into the future." *Sours*, 674 P.2d at 996.

Similarly, in *Lawson*, the court of appeals held that "[i]f the evidence supports an inference that the effects of an injury have persisted for a number of years and that the plaintiff's pain will continue into the future, a jury may infer that the injury will be permanent." *Lawson*, 878 P.2d at 130. The *Lawson* court found that the inference standard for permanency was satisfied by the plaintiff's testimony that she continued to have pain, restricted motion, and numbness associated with her injuries and that she had to curtail her activities as a result. *See id.; see also Morgan*, 837 P.2d at 304 (finding that the inference standard for future pain and suffering was satisfied by the victim's testimony of pain and one of the victim's treating physician's testimony that the pain would continue into the future).

■ We disagree with the reasoning of the court of appeals in this case and in *Askew*. Although expert testimony on future pain and suffering may not be necessary in a given case because the victim is uniquely able to testify about his or her own pain and suffering, it does not necessarily follow that expert testimony will not be required to explain the relationship of the non-use of a seat belt and possible causation, exacerbation, or enhancement of injuries in an automobile collision. Hence, the inference standard which the court of appeals adapted from pain and suffering/permanency case law is not transferable to this context.

■ Although we disagree with the court of appeals' reasoning, we do not agree with Anderson that under section 42-4-237(7), a

defendant is required to prove affirmatively a causal connection before the jury is instructed on the seat belt defense. Rather, the statute requires submission of the seat belt defense to the jury if a defendant comes forward with some competent evidence that the plaintiff was not wearing a seat belt at the time of the accident. *See Powell v. Brady*, 30 Colo.App. 406, 412, 496 P.2d 328, 332 (1972) ("In order for the [mitigation of damages affirmative defense] to be submitted to the jury there must be competent evidence to the effect that plaintiff failed to take reasonable efforts to mitigate his damages."), *aff'd sub nom., Brady v. City & County of Denver*, 181 Colo. 218, 508 P.2d 1254 (1973). *See also Gordon v. Benson*, 925 P.2d 775, 778 (Colo. 1996) (explaining generally that a party is entitled to "an instruction embodying the party's theory if there is sufficient evidence in the record to support it"); *Davis v. Cline*, 177 Colo. 204, 210, 493 P.2d 362, 365 (1972) (same).

In construing a statute, a court's primary task is to give effect to the General Assembly's purpose in enacting that statute. *See Christie v. Coors Transp. Co.*, 933 P.2d 1330, 1332 (Colo.1997). This is best done by giving "the statutory terms their plain and ordinary meaning." *Swieckowski v. Fort Collins*, 934 P.2d 1380, 1382 (Colo.1997). We need not resort to legislative history or principles of statutory interpretation as a means of discerning the General Assembly's intent if that intent is expressed clearly and unambiguously on the face of the statute. *See General Elec. Co. v. Niemet*, 866 P.2d 1361, 1364 (Colo.1994).

Section 42–4–237(7) provides that evidence of seat belt non-use "*shall be admissible* to mitigate [pain and suffering] damages with respect to any person who was involved in a motor accident and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident." § 42–4–237(7), 11 C.R.S. (1997) (emphasis supplied). The use of the word "shall" signifies that the legislature intended for seat belt non-use to be admissible, if that non-use is supported by competent, sufficient evidence.[7] *See Pearson v. District Court*, 924 P.2d 512, 516 (Colo.1996) ("The generally accepted and familiar meaning of 'shall' indicates that this terms is mandatory."). Thus, the intent of the legislature is clear and unambiguous and we need not look to the legislative history underpinning section 42–4–237(7).

Nevertheless, we note that our outcome today comports with the General Assembly's goal in enacting the Mandatory Seat Belt Act, *i.e.*, to promote seat belt use. This aim is amply reflected in the provisions of the Mandatory Seat Belt Act. *See, e.g.*, § 42–4–237(4), 11 C.R.S. (1997) (making non-use of a seat belt a class B traffic infraction and subjecting drivers and front-seat passengers not wearing seat belts to penalties). By decreasing the amount of pain and suffering damages in proportion to injuries attributable to seat belt non-use, the General Assembly sent a signal to drivers and front-seat passengers to buckle up. It is not unusual for the legislature to circumscribe non-economic damages as a declaration of public policy. In fact, the legislature has acted in the past to limit pain and suffering damages in general by enacting tort reform legislation. *See* § 13–21–102.5(3)(a), 5 C.R.S. (1997) (lim-

---

7. We note that throughout the pendency of this case, both parties and the trial court have treated section 42–4–237(7) as an affirmative defense. Indeed, the use of the language "mitigate damages" in that section indicates the legislature intended to create an affirmative defense. *See Fair v. Red Lion Inn*, 943 P.2d 431, 437 (Colo. 1997) ("Mitigation or failure to mitigate is an affirmative defense that may be raised by the defendant."); C.R.C.P. 8(c) ("Any mitigating circumstances to reduce the amount of damages shall be affirmatively pled."). Because it is an affirmative defense, the burden rests with the moving party to prove the defense. *See Fair*, 943 P.2d at 437. Generally, "the defense of failure to mitigate damages will not be presented to the jury unless the trial court determines there is sufficient evidence to support it." *Id.* However, as discussed in the text, section 42–4–237(7) only requires that the defendant initially show, by competent evidence, that the plaintiff was not wearing his or her seat belt. Thus, the trial court decides whether a reasonable jury could find that the plaintiff was not wearing a seat belt at the time of the accident in light of the evidence produced by the defendant. If the trial court finds that the evidence is sufficient, then the jury can be instructed on the seat belt defense. Here, Anderson admitted that she was not wearing a seat belt and, therefore, Watson did not have to produce any evidence on that point.

iting awards for non-economic damages); *see also Niemet,* 866 P.2d at 1364 (explaining that the General Assembly's tort reform legislation limits awards for non-economic damages because such damages are unduly burdensome).

█ Once the defendant establishes, or the plaintiff admits, that the plaintiff was not wearing a seat belt, the plaintiff may produce evidence as to the lack of a relationship between his or her injuries and non-use of a seat belt or to define and compare the pain and suffering caused by use versus non-use of a seat belt. Such evidence could include expert testimony to show, for example, that: seat belt non-use did not cause the plaintiff's injuries; some injuries would have occurred regardless of that non-use; or the plaintiff would have had different, more painful injuries had the seat belt been worn.[8]

Some courts have held that the initial burden to come forward with expert testimony on the causal relationship between seat belt non-use and injuries lies with the defendant who raises the seat belt defense.[9] In those jurisdictions, the jury will not be instructed on the seat belt defense until the defendant has presented sufficient evidence to allow a reasonable jury to apportion between injuries caused by seat belt use and non-use. That approach does not comport with the statute at issue here. Rather, the language of section 42–4–237(7) makes it mandatory that evidence of seat belt non-use be admissible

for mitigation of pain and suffering damages as long as that non-use is supported by competent, sufficient evidence.

█ Placing the burden on the defendant to prove initially a prima facie causal relationship between the plaintiff's injuries and his or her non-use of a seat belt has some appeal because the party asserting an affirmative defense has the burden to prove that defense. In Colorado, however, the legislature has mandated the admission of evidence of non-use and has made a legislative determination that seat belt use mitigates pain and suffering. The statutory penalty in section 42–4–237(7) affects pain and suffering damages only, and not other damages, *i.e.,* medical expenses and economic damages. Under our interpretation, the decision rests with the plaintiff whether to provide expert testimony on the subject based on an assessment of his or her claim for pain and suffering. If the plaintiff chooses, he or she may leave it to the jury's common sense to apportion pain and suffering damages between injuries associated with seat belt non-use and other injuries. Alternatively, if the plaintiff opts to present expert testimony, the defendant may counter with his or her own experts. Of course, the defendant may choose to present expert testimony even though the plaintiff has not done so. If the defendant were compelled to present expert testimony to prove causation, as proposed by Anderson, the statute would not be given its full force

8. According to recent medical findings, belted occupants sustain a different spectrum of injuries from non-belted occupants and the injuries to belted occupants are usually less severe. As with unbelted occupants, however, belted occupants frequently suffer neck and cervical spine injuries. *See* Robert Bourbeau et al., *Neck Injuries Among Belted and Unbelted Occupants of the Front Seat of Cars,* 35 J. Trauma 794, 794–95 (1993) (explaining that neck and minor cervical spine injuries are common in belted occupants whereas unbelted passengers suffer a higher rate of serious cervical spine injuries); Donald F. Huelke et al., *Vertebral Column Injuries and Lap–Shoulder Belts,* 38 J. Trauma 547, 547 (1995) (noting specifically that when head impact was reported in conjunction with cervical spine injuries, it was "difficult to clearly determine whether the cervical spine injury was only a result of head movement or associated with head impact on some vehicle interior structure" and excluding those instances from analysis).

9. For example, in a case involving comparative negligence, the Supreme Judicial Court of Massachusetts found that the defendant's failure to produce any evidence that the plaintiff's non-use of her seat belt caused any of her injuries was dispositive of the seat belt defense. *See Shahzade v. C.J. Mabardy, Inc.,* 411 Mass. 788, 586 N.E.2d 3, 8 (1992). Thus, it held that:

In the absence of any such evidence, the judge properly refused to submit the issue to the jury, as the jury would have been left to speculate as to whether the plaintiff's failure to wear her seat belt contributed to her injuries. Because the defendant has not presented any evidence of causation tending to show that all or some of the plaintiff's injuries would have been averted or minimized if she had been wearing a seat belt, the judge properly refused to instruct the jury on this issue.

*Id.,* 586 N.E.2d at 8 (citations omitted).

and effect. Specifically, the defendant would bear the initial expense of expert testimony, thereby undermining the legislature's salutary goal of increasing seat belt use by penalizing non-use in the context of pain and suffering damages.

In summary, we conclude that if a defendant chooses to raise the seat belt defense, the defendant must prove a prima facie case of seat belt non-use before the appropriate instruction on that defense can go to the jury. The "inference standard" discussed by the court of appeals imposed an additional requirement on Watson that is not required under section 42–4–237(7). Failure to wear a seat belt automatically satisfies any obligation on the defendant's part to show a causal relationship to pain and suffering. By enacting the seat belt defense, the General Assembly has determined as a matter of law that there is a causal connection between non-use of a seat belt and pain and suffering damages. Thus, we reject the "inference standard" and conclude that here, because Anderson admitted that she was not wearing an available seat belt at the time of the accident, the trial court appropriately instructed the jury on the seat belt defense

### III.

For the reasons delineated above, we find that the defendant is not required to prove a causal relationship between the plaintiff's non-use of a seat belt and pain and suffering damages. Thus, we affirm, on different grounds, the judgment of the court of appeals.

`BENDER, J., does not participate.