**Wayne E. HARDING, Jr., in a shareholder derivative suit on behalf of Heritage Health Products Company, a Colorado corporation, Plaintiff–Appellant,**

v.

**HERITAGE HEALTH PRODUCTS COMPANY, a Colorado corporation, Defendant–Appellee.**

No. 03CA0864.

Colorado Court of Appeals, Div. III.

July 15, 2004.

Certiorari Denied Oct. 18, 2004.

Harding & Associates, Phil Harding, Denver, CO, for Plaintiff–Appellant.

Hogan & Hartson, LLP, Andrew R. Shoemaker, Boulder, CO, for Defendant–Appellee.

Opinion by Judge GRAHAM.

In this dispute about amendment of corporate bylaws and election of directors, plaintiff, Wayne E. Harding, Jr., appeals the trial court's summary judgment in favor of defendant, Heritage Health Products Company. We affirm.

Heritage is a Colorado corporation that markets and distributes dietary supplements. The Schakel family owns fifty-six percent of the shares; Harding and the Faller family each own twenty-two percent of the shares.

In 1996, the Heritage board of directors and shareholders unanimously approved two amendments to the bylaws. One amendment provided that the "number of directors of the corporation shall be established by resolution of the Board of Directors, but in no case shall the number of directors be less than three (3) or greater than five (5)." The other amendment established that a two-thirds supermajority vote of the shareholders was required to amend the bylaws.

From 1996 to 2000, Heritage operated in a potential deadlock status with four directors, except for a four-month period when there

was one vacancy. The board has never fixed by resolution the exact number of directors.

Between late 2001 and early 2002, Heritage's business declined significantly, and dissension arose among the shareholders. At a shareholder meeting in 2002, one of the Schakels, who was also a director, proposed that the number of directors be increased to five. Harding and Faller objected to a shareholder vote on the issue because of the above-mentioned amendments to the bylaws. The shareholders approved a fifth director, with the Schakel family voting for the proposal and Harding and Faller voting against it.

Harding brought an action for a declaratory judgment that the number of directors remain at four until the board of directors approves a resolution otherwise. Heritage counterclaimed for a declaration that the supermajority voting provision is invalid under Colorado law and void ab initio. Both Harding and Heritage moved for summary judgment.

The trial court ruled in favor of Heritage, concluding that, because the bylaws give exclusive power to the board of directors to determine the number of directors, the bylaws are inconsistent with Colorado law, § 7–108–103(2), C.R.S.2003. The court also determined that the supermajority voting provision in the bylaws is invalid under § 7–110–202, C.R.S.2003, and therefore, the shareholders' and board's unanimous approval of the two-thirds supermajority voting provision was ineffective.

## I.

Summary judgment is a drastic remedy and should only be granted if there is a clear showing that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606 (Colo.1999). We review orders granting summary judgment de novo. *McIntyre v. Bd. of County Comm'rs*, 86 P.3d 402 (Colo.2004).

Bylaws "may contain any provision for managing the business and regulating the affairs of the corporation that is not inconsistent with law." Section 7–102–106(2), C.R.S. 2003. Thus, resolution of this case turns on whether the bylaw amendments are consistent with Colorado law, specifically §§ 7–108–103(2) and 7–110–202(1).

Our primary task in construing a statute is to determine and give effect to the intent of the legislature. Accordingly, we look to the statutory language, giving words and phrases their plain and ordinary meaning, and interpreting the statute in a way that best effectuates the purpose of the legislative scheme. If the plain language of a statute is unambiguous and clear, we need not employ other tools of statutory interpretation. *Anderson v. Watson*, 953 P.2d 1284 (Colo.1998); *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo.1997).

## II.

Harding first contends that the bylaw provision vesting exclusive power in the board of directors to fix the number of directors is not inconsistent with § 7–108–103(2). We disagree.

Section 7–108–103(2) provides:

The bylaws may establish a range for the size of the board of directors by fixing a minimum and maximum number of directors. If a range is established, the number of directors may be fixed or changed from time to time within the range by the shareholders or the board of directors.

The plain language of the statute permits both the shareholders and the board of directors to fix or change the number of directors within the range established in the bylaws. Heritage's bylaws, however, provide that only the board of directors may fix the number of directors.

Harding reads the statute by inserting the word "either" before "shareholders" and adding the phrase "but not both" after "directors." We perceive no reason to modify the plain meaning of the statute's words with Harding's editorial enhancements. To do so would be contrary to the fundamental principle that shareholders ultimately have the power to elect the board, remove the board, and modify the corporation's bylaws. *See* §§ 7–108–108, 7–110–201, C.R.S.2003.

This is not to say that a board of directors may set its own size only with approval of the shareholders. In 1984, the Model Business Corporation Act § 8.03 amended its suggested rules of governance which set limits on changes in board size that could be made without shareholder approval. It is precisely this amendment from which § 7–108–103 emanates.

We have found no case that supports Harding's position that statutory provisions like § 7–108–103 somehow allow the directors to exclude the shareholders from fixing the number of a corporation's directors. To the contrary, authority in other jurisdictions suggests that the shareholders cannot be prevented from exercising their power. *See, e.g., Ellin v. Consol. Caribou Silver Mines,* 31 Del.Ch. 149, 67 A.2d 416 (1949)(where the number of directors is fixed by the bylaws, the shareholders were nevertheless permitted to set the number at the annual meeting); *Stone v. Auslander,* 28 Misc.2d 384, 212 N.Y.S.2d 777 (Sup.Ct.1961)(directors could reduce number of directors without notifying shareholders); *Hinckley v. Swaner,* 13 Utah 2d 93, 368 P.2d 709 (1962)(allowing shareholders to fix the number of directors by resolution and without amending the bylaws).

We recognize that these decisions did not concern a statutory provision identical to § 7–108–103(2). Nevertheless, these cases provide a context for § 7–108–103(2) in corporate law which confirms that shareholders cannot be excluded from corporate governance. In light of this principle, we are not persuaded that the statute should be read to mean that either the directors or the shareholders may fix the number of directors, but not both.

Here, the statute plainly permits shareholders to set the number of directors, and a provision in the bylaws which removes that right is contrary to law. Because Colorado law and the bylaw amendment are inconsistent, the bylaw amendment is void. *See* § 7–102–106(2) (providing that bylaws may contain provisions which are not inconsistent with Colorado law or the articles of incorporation).

Furthermore, the history of Heritage's corporate governance affirms that the shareholders are permitted to fix the number of directors. Indeed, the shareholders have always elected a number of directors within the range established in the bylaws, while the board of directors has never passed a resolution fixing the number of directors.

We conclude that the trial court was correct in determining that, under Colorado law, either the board of directors or the shareholders could determine the number of directors and that granting this power exclusively to the board of directors is contrary to Colorado law.

### III.

■ We also reject Harding's contention that the bylaw provision requiring a two-thirds supermajority vote of the shareholders to change the bylaws is valid.

### A.

Section 7–110–202(1) provides that, *"[i]f authorized by the articles of incorporation,* the shareholders may amend the bylaws to fix a greater quorum or voting requirement for shareholders ... than is required by articles 101 to 117 of this title" (emphasis added).

Heritage's articles of incorporation do not authorize an amendment to the bylaws to add a supermajority voting provision and, for the reasons expressed above, the supermajority voting provision is likewise void. *See* § 7–102–106(2).

Harding, relying on *Paulek v. Isgar,* 38 Colo.App. 29, 551 P.2d 213 (1976), argues that, notwithstanding § 7–110–202(1), the supermajority voting provision should be upheld because the shareholders unanimously adopted the provision and, therefore, the articles of incorporation should be deemed amended by implication. *Paulek* involved a shareholder suit to prevent the board of directors from issuing a fourth series of preferred shares because the bylaws provided for only three series. The division held that, when the board of directors is given the power to amend the bylaws, action by a majority of the directors in contravention of the bylaws constitutes an implied amendment of the bylaws.

We read *Paulek* as inapposite. Unlike in *Paulek*, here, neither the shareholders nor directors were entitled to amend the quorum or voting requirements of the bylaws absent authorization from the articles of incorporation. Because the articles of incorporation provide no such authorization, the amendment to the bylaws requiring a supermajority vote of the shareholders is void. *Paulek* involved an implied waiver of the bylaws-not the articles of incorporation, a document providing public notice of the corporation's limits on governance.

Thus, the trial court properly concluded that the supermajority voting provision is invalid.

### B.

We also reject Harding's contention that Heritage's objection to the supermajority voting provision is barred by waiver, estoppel, ratification, laches, and the statute of limitations.

Harding asserts that the trial court failed to rule on his defenses. However, by ruling in favor of Heritage on its counterclaim regarding the supermajority voting provision, the court rejected Harding's affirmative defenses.

A party may not waive objections based on illegality or public policy, and equitable doctrines may not be used to enforce an illegal or void agreement. *Equitex, Inc. v. Ungar*, 60 P.3d 746 (Colo.App.2002); *see also Topro Servs., Inc. v. McCarthy W. Constructors, Inc.*, 856 F.Supp. 1461, 1466 (D.Colo.1994)(applying Arizona law, the court found that the defenses of waiver and estoppel cannot be invoked to enforce an agreement which is void as against public policy); *Menzel v. Niles Co.*, 86 Colo. 320, 324, 281 P. 364, 365 (1929)("A contract which is contrary to public policy is void because it is contrary to public policy, and neither party to the contract is estopped from questioning it merely because the other party has parted with a property right or rendered service in reliance upon it.").

Here, because the supermajority voting bylaw provision is void, Harding is precluded from a remedy under equitable principles.

The judgment is affirmed.

Judge DAILEY and Judge PIERCE * concur.