Leslyn CARLSON, Petitioner,

v.

Kimberly Sue FERRIS and Man Made
Pizza, Inc., d/b/a Dominos Pizza,
Respondents.

No. 02SC395.

Supreme Court of Colorado,
En Banc.

Dec. 1, 2003.

Gradisar, Trechter, Ripperger, Roth & Croshal, James M. Croshal Pueblo, Colorado, Attorneys for Petitioner.

Ireland, Stapleton, Pryor & Pascoe, P.C., Richard L. Shearer, Robert S. Anderson, Denver, Colorado, Paul S. Edwards & Associates, Fotios Burtzos, Colorado Springs, Colorado, Attorneys for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

In this case, we determine whether the language of section 42–4–237(2), 11 C.R.S. (2003), requires that a driver of an automobile wear both a lap and a shoulder belt. We hold that section 42–4–237(2) requires that drivers and front seat passengers of automobiles that have been equipped with a lap and a shoulder belt pursuant to federal motor vehicle safety standards must wear both the lap and the shoulder belt in order to comply with the statute.

## I.

### FACTS AND PROCEEDINGS BELOW

Leslyn Carlson filed suit against Kimberly Ferris after the two were involved in an automobile accident. Carlson alleged that Ferris caused the accident when she failed to yield the right of way at a stop sign. At the time of the accident, the driver's seat of Carlson's vehicle was equipped both with an automatic shoulder belt and a separate lap belt that had to be manually fastened. Prior to trial, Carlson stipulated that she was wearing the automatic shoulder belt, but not the separate manual lap belt, at the time of the accident.

In her defense, Ferris sought to show that Carlson was in violation of section 42–4–237(2) because she was wearing only one of the two available safety belts. Subsection two requires that drivers and front seat passengers in a motor vehicle equipped with a safety belt system wear a "fastened safety belt" while the vehicle is being operated on a street or highway. The subsection reads:

Unless exempted pursuant to subsection (3) of this section, every driver of and every front seat passenger in a motor vehicle equipped with a safety belt system shall wear a fastened safety belt while the

motor vehicle is being operated on a street or highway in this state.

§ 42–4–237(2).

Because Carlson was not wearing her manual lap belt at the time of the accident, Ferris asked the trial court to instruct the jury that Carlson's failure to wear the lap belt mitigates damages. Specifically, Ferris requested Civil Jury Instruction 5:2A, failure to mitigate by nonuse of a safety belt.[1] Ferris argued that the language of subsection seven of 42–4–237 entitled her to such an instruction. Section 42–4–237(7) states, in relevant part:

> Evidence of failure to comply with the requirement of subsection (2) of this section shall be admissible to mitigate damages with respect to any person who was involved in a motor vehicle accident and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident.

The trial court ruled that because Carlson was wearing at least one of the available safety belts, she was in compliance with the statute. Thus, the trial court refused to give the requested instruction 5:2A on nonuse of a safety belt.[2] Additionally, the trial court precluded Ferris from making any reference to Carlson's failure to wear her lap belt as evidence of a statutory violation.

On appeal, Ferris contended the trial court erred when it refused jury instruction 5:2A and precluded Ferris from arguing that Carlson's failure to wear her lap belt constituted a statutory violation. The court of appeals agreed with Ferris and held that the plain meaning of section 42–4–237(2) "requires drivers to fasten all safety belts included in a vehicle's safety belt system in order to defeat a claim of failure to mitigate under § 42–4–237(7)." *Carlson v. Ferris*, 58 P.3d 1055, 1058 (Colo.App.2002). The court of appeals reasoned that the definition of "safety belt system" contained in section 42–4–237(1)(b) includes a combination of lap and shoulder belts, but does not specify the various usage options that may satisfy the requirement that one wear a "fastened safety belt." The court of appeals insisted that this language reveals the General Assembly's intent to require that a driver and every front seat passenger utilize the complete "system." Therefore, the court of appeals reversed the trial court judgment and remanded the case for a new trial.

We granted certiorari in this case to interpret the language of section 42–4–237(2). Section 42–4–237(2) reads:

> Unless exempted pursuant to subsection (3) of this section, every driver of and every front seat passenger in a motor vehi-

---

1. The nonuse of safety belt instruction reads:
   If you find that the plaintiff, (name), has had noneconomic damages for pain and suffering, then you must consider whether the defendant,(name), has proved (his)(her) affirmative defense of plaintiff's failure to mitigate or minimize damages due to the nonuse of a safety belt. Damages for pain and suffering, if any, caused by plaintiff's failure to use an available safety belt cannot be awarded to the plaintiff. You may only consider the plaintiff's failure, if any, to use an available safety belt in relation to the plaintiff's claim for pain and suffering damages.
   This affirmative defense is proved if you find by a preponderance of the evidence that the plaintiff failed to use a safety belt.
   If you find that this affirmative defense has not been proved by a preponderance of the evidence, then you shall make no deduction from the plaintiff's damages for pain and suffering for the nonuse of a safety belt.
   On the other hand, if you find that this proposition has been proved by a preponderance of the evidence, then you must determine the amount of pain and suffering damages caused

by the plaintiff's failure to use a safety belt. If you award noneconomic damages, this amount must be deducted from that award.
CJI–Civ.4d 5:2A

2. Despite its ruling on 42–4–237(7) and jury instruction 5:2A, the trial court allowed the jury to consider whether Carlson was comparatively negligent in failing to wear her lap belt. Following trial, the jury returned a verdict in favor of Carlson and awarded her $56,125 in damages. However, the jury found Carlson to be 18.3% comparatively negligent, thus reducing her damage award to $45,854.13. Carlson cross appealed the trial court's determination that the jury could consider nonuse of the lap belt as comparative negligence. The court of appeals reversed on this point, relying upon their determination in *Churning v. Staples*, 628 P.2d 180, 181 (Colo. App.1981), that the logic advanced in *Fischer v. Moore*, 183 Colo. 392, 517 P.2d 458 (1973) compels the result that nonuse of a safety belt does not establish contributory negligence. We denied certiorari on the issue.

cle equipped with a *safety belt system* shall wear a *fastened safety belt* while the motor vehicle is being operated on a street or highway in this state. (emphasis added)

The question raised on review is whether the court of appeals erred in holding that section 42–4–237(2) requires that a driver of a vehicle that has been equipped with a lap and a shoulder belt pursuant to federal motor vehicle safety standards must wear both the lap and the shoulder belt.

## II.

## ANALYSIS

Although both parties agree that the language of section 42–4–237(2) is clear and unambiguous, each party differs as to what the General Assembly intended and what the statute requires. After reviewing each party's arguments, we do not find either party's interpretation to be correct.

## A.

## ARGUMENT OF THE PARTIES

Carlson's plain meaning interpretation of section 42–4–237 hinges on the distinction she draws between the statutory definition of the term "safety belt system" and the words "fastened safety belt." In section 42–4–237(1)(b), the General Assembly defined safety belt system as:

> a system utilizing a lap belt, a shoulder belt, or any other belt or combination of belts installed in a motor vehicle to restrain drivers and passengers, which system conforms to federal motor vehicle safety standards.

The General Assembly next stated that drivers and front seat passengers of motor vehicles "equipped with a safety belt system shall wear a fastened safety belt." § 42–4–237(2). Carlson asserts that because the language of section 42–4–237(2) differentiates between a "safety belt system" and "a fastened safety belt," the legislature did not intend that individuals utilize an entire safety belt system. Rather, Carlson argues, a driver or front seat passenger of an automobile complies with the statute when wearing at least one of the belts in a safety belt system.

Ferris has come to a markedly different conclusion in regard to the plain meaning of section 42–4–237(2). Unlike Carlson, Ferris draws no distinction between the terms "safety belt system" and "fastened safety belt." Instead, Ferris further argues the term "fastened safety belt" refers both to a fastened safety belt and to fastened safety belts. For this interpretation, Ferris relies upon section 2–4–102, 1 C.R.S. (2003), which provides that the "singular includes the plural, and the plural includes the singular." Thus, Ferris reads the requirement of a "fastened safety belt" to mean "fastened safety belts."

Ferris insists that this plain meaning interpretation is supported by an understanding that the purpose behind the statute is to conform to "federal motor vehicle safety standards." § 42–4–237(1)(b). Ferris argues that because the state of Colorado does not conduct its own safety belt testing or implement regulations governing safety belts, Colorado is wholly reliant on the federal guidelines and standards related to safety belt use and manufacture. To bolster this point, Ferris details the history of the federal government's efforts to enlist the assistance of the states in creating seat belt laws which function to promote seat belt use and further driving safety.[3] According to Ferris, this rich history coupled with the voluminous applicable federal regulations[4] on the subject make clear that the federal government intended to· create rigorous safety belt standards in order to reduce traffic death and injuries. Thus, given Colorado's adherence to federal motor vehicle safety standards, Ferris claims that it would be absurd to allow an individual to wear only one safety belt when two are available for their particular seat.

---

**3.** For a detailed history of the federal government's efforts in requiring safety belt manufacture and use, *see Geier v. American Honda Motor Co., Inc.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

**4.** Federal regulations concerning occupant crash protection are detailed in, 49 C.F.R. § 571.208 (2003). Regulations regarding seat belt assembly are found in 49 C.F.R. § 571.209 (2003).

## B.

## PLAIN MEANING

■ We construe the statute as a whole to understand the meaning of particular terms and to give effect to the legislative intent. Our interpretation of the plain language of section 42-2-237(2) leads us to the conclusion that the General Assembly, by requiring drivers and front seat passengers to wear a "fastened safety belt," intended that drivers and front seat passengers wear both a lap and a shoulder belt when a vehicle has been equipped with both belts pursuant to federal motor vehicle safety standards.

■ In matters involving statutory interpretation, the duties of a reviewing court are clear. The court has a fundamental responsibility to interpret statutes in a way that gives effect to the General Assembly's intent in enacting that particular statute. *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002); *Martin v. People*, 27 P.3d 846, 851 (Colo.2001); *Anderson v. Watson*, 953 P.2d 1284, 1290 (Colo.1998). Such is best achieved by looking at the language of the statute and giving the words their plain and ordinary meaning. *Luther*, 58 P.3d at 1015; *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.*, 3 P.3d 30, 35 (Colo.2000). If the statutory language unambiguously sets forth the legislative intent, other rules of statutory interpretation need not be employed. *People v. Norton*, 63 P.3d 339, 344 (Colo.2003). It is essential that courts refrain from rendering opinions that are inconsistent with the legislative intent. *City of Colorado Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244, 1249 (Colo.2000). Therefore, courts must construe the statute as a whole in order to give "consistent, harmonious and sensible effect to all its parts." *Luther*, 58 P.3d at 1015; *United Airlines, Inc. v. Industrial Claim Appeals Office*, 993 P.2d 1152, 1157 (Colo.2000).

When construing section 42-4-237 as a whole, the meaning of subsection two becomes clear. An analysis of the various subparts of the statute show the General Assembly intended that drivers and front seat passengers wear both a lap and a shoulder belt while occupying a motor vehicle that has been equipped with both belts in order to meet federal motor vehicle safety standards.

As both parties recognize, it is necessary to determine the meaning of the terms "safety belt system" and "fastened safety belt." Carlson sees these two terms as distinctly different, whereas Ferris and the court of appeals view the terms as synonymous. However, Carlson, Ferris, and the court of appeals all assume that a "safety belt system" consists of the various safety belts that exist for a particular seat. We do not view the assumption that a "safety belt system" consists of the various safety belts that exist for a particular seat as well founded.

■ In section 42-4-237(1)(b), the General Assembly defined safety belt system as:

a system utilizing a lap belt, a shoulder belt, or any other belt or combination of belts *installed in a motor vehicle to restrain drivers and passengers*, which system conforms to federal motor vehicle safety standards. (emphasis added)

The plain language of this section indicates that "safety belt system" refers to all of the safety belts that have been installed in a motor vehicle to restrain drivers and front seat passengers. The language of this subsection reflects that a motor vehicle may contain any number, type, or combination of belts within its "safety belt system." The term "safety belt system" does not mean the belts at a particular seat. Rather, a "safety belt system" is comprised of the many belts contained within a motor vehicle to restrain drivers and front seat passengers.

■ This definition of "safety belt system" helps us discern the meaning of "safety belt" as contained within the term "fastened safety belt." In describing the belts that may exist in a "safety belt system," the General Assembly simply listed, "a lap belt, a shoulder belt, or any other belt or combination of belts." § 42-4-237(1)(b). The General Assembly did not refer to any of these particular belts as a "safety belt," and it did not specifically define the term "safety belt." The General Assembly's use of "safety belt," "safety belt system," and "belt" implies that the term "safety belt" has a meaning that is distinct from the term "safety belt system" and from the

types of belts listed in the definition of "safety belt system." Thus, a "safety belt" is not the system of many belts contained within a motor vehicle, nor does the term simply refer to one of those many belts.

■ The term "safety belt" has a meaning that is not only distinct from the term "safety belt system," but also from the types of belts listed in the definition of "safety belt system." We do not "presume that the legislature used language 'idly and with no intent that meaning should be given to its language.'" *See People v. J.J.H.*, 17 P.3d 159, 162 (Colo.2001), *quoting McMillin v. State*, 158 Colo. 183, 405 P.2d 672 (1965). Rather, the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings. *See Mason v. People*, 932 P.2d 1377, 1380 (Colo. 1997). Thus, had the General Assembly intended that a driver or a front seat passenger of an automobile that has been equipped with both a lap and a shoulder belt pursuant to federal motor vehicle safety standards wear only one of the belts described in the definition of "safety belt system", it would have simply required that a single "belt" be worn in order for an individual to comply with section 42–4–237(2). The General Assembly would not have included the word "safety" in the term "fastened safety belt." Similarly, had the General Assembly intended that a driver or a front seat passenger wear an entire "system," it would have worded section 42–4–237(2) to require that drivers and front seat passengers wear a "fastened safety belt system."

In section 42–4–237(2), the General Assembly purposefully worded the requirement to wear a "fastened safety belt" in a way that differed from its wording of the term "safety belt system." Pursuant to the definition of "safety belt system," we discern that a "safety belt," like "safety belt system," may refer to a particular belt or a combination of belts. However, unlike "safety belt system," the term "safety belt" does not refer to all the belts installed in a motor vehicle to meet federal motor vehicle safety standards. We conclude that because the language of section 42–4–237(2) does not include the term "system," the General Assembly intended "safety belt" to refer to the belts that have been installed in a particular seat pursuant to federal motor vehicle safety standards. Additionally, because the General Assembly did not state that a driver or a front seat passenger must simply wear a "belt" when occupying a motor vehicle, we conclude that the inclusion of the word "safety" signals that drivers and front seat passengers in vehicles that have been equipped with both a lap and a shoulder belt pursuant to federal motor vehicle safety standards must wear the lap and the shoulder belt in order to comply with section 42–4–237(2).

### C.

### SUPPORT FOR PLAIN MEANING

Federal law governing occupant crash protection and seat belt assemblies support our interpretation of "safety belt." As we explain in greater detail below, in section 42–4–237(1)(b) the General Assembly indicated that a motor vehicle's "system" must conform to federal motor vehicle safety standards. Federal regulations regarding occupant crash protection and seat belt assemblies are found in 49 C.F.R. § 571.208 (2003) and 49 C.F.R. § 571.209 (2003) respectively. Throughout these provisions, the federal government exhaustively details the many seat belt assemblies that are required in specific motor vehicles and in particular seats in specific motor vehicles. Although the federal regulations do not specifically use the term "safety belt system," it nonetheless appears that both the federal regulations and our state statute use the word "system" to refer to all of the belts that are required in a particular vehicle. In addition, the regulations do not require that a driver or a front seat passenger wear an entire "system." Instead, the federal regulations governing "safety belt systems" simply detail the various belts that are required for particular motor vehicles.

Viewing the terms "safety belt" and "safety belt system" in light of federal motor vehicle safety standards helps us understand the plain meaning of the term "safety belt" to be the portion of the "safety belt system" required for a particular seat. We conclude

that, to comply with the requirement to wear a "fastened safety belt," a driver or front seat passenger does not have to wear a motor vehicle's entire "safety belt system" nor is it proper for those individuals to wear only one belt if both a lap and a shoulder belt have been installed. Instead, in vehicles in which driver's and front seat passenger's seats have been equipped with both a lap and a shoulder belt pursuant to federal motor vehicle safety standards, drivers and front seat passengers must wear both the lap and the shoulder belt in order to comply with section 42–4–237(2).

Our plain meaning interpretation of section 42–4–237(2) is also consistent with our review of various provisions contained within section 42–4–237. First, the legislature indicated in section 42–4–237(1)(b) that a vehicle's "safety belt system" must conform to federal motor vehicle safety standards. The federal government, in enacting standards that govern occupant crash protection, details the regulatory purpose as:

> [to] reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements in terms of forces and accelerations measured on anthropomorphic dummies in test crashes, and by specifying equipment requirements for active and passive restraint systems.

49 C.F.R. § 571.208 (2003).[5] As the National Highway Traffic Safety Administration relates:

> Belts are approximately 50% effective for preventing fatality in crashes in which motorists would otherwise die, so raising belt use saves lives. It is estimated that rais-

ing use to 79% from 75% prevented 1,000 deaths that would have otherwise occurred in 2003. Since seat belts saved an estimated 14,000 motorists in 2002, we would predict that belts will have prevented 15,000 deaths by the end of 2003. In saving lives and preventing injuries, belt use saves billions of dollars in costs to society annually, mainly through preventing the loss in productivity and reducing the medical costs that would otherwise occur. At least 15,000 lives will be saved in each future year if belt use is maintained at 79% or higher.[6]

These statistics reflect how necessary it is to public safety and welfare that individuals wear proper safety belts. In conforming to federal motor vehicle safety standards Colorado has, through the mandatory use provisions of section 42–4–237, intended to increase public safety and welfare through the proper use of safety belts. Given this fact, it would be incongruous for the General Assembly to find that a driver or front seat passenger is in compliance with the statute when only wearing a shoulder belt if a lap belt has also been installed. The General Assembly's reliance on federal standards in section 42–4–237(1)(b) reveal its intent to require a driver and every front seat passenger to wear a lap and a shoulder belt in order to comply with the statute.

■ Subsection four of section 42–4–237 also illuminates the General Assembly's intent in enacting the mandatory use provision. Section 42–4–237(4) makes nonuse of a fastened safety belt a class B traffic infraction, thus subjecting drivers and front seat passengers to a penalty should they not wear all

---

**5.** The federal government's concern with promoting motor vehicle safety through the use of safety belts is also reflected in grant provisions in which states are given specific amounts of grant money for complying with the Secretary of Transportation's traffic safety program. 23 U.S.C.A. § 153 (2003) details how states can receive grant money for implementing programs that: educate citizens about safety belts; train law enforcement officers to enforce safety belt laws; and monitor safety belt compliance rates. Consequently, the federal government defines "safety belt" in this provision as "with respect to other passenger vehicles, an occupant restraint system consisting of integrated lap shoulder belts." 23 U.S.C.A. § 153(i)(4)(B).

It is also of note that in March of 2003, the Secretary of Transportation authorized $40.7 million in grants to the states to promote safety belt use. Colorado received $793,172 from this program. *See U.S. Transportation Secretary Mineta Announces Grants of $40.7 Million to Increase Safety Belt Use,* (March 21, 2003), *available at* http://www.dot.gov/affairs/nhtsa0703.htm.

**6.** US Department of Transportation, National Highway Traffic Safety Administration: Technical Report, *Safety Belt Use in 2003,* DOT HS 809646 (September 2003), *available at* http://www–nrd.nhtsa.dot.gov/pdf/nrd–30/NCSA/Rpts/2003/809646.pdf.

the safety belts installed at their particular seat. As this court noted in the *Anderson* case, this penalty provision comports with the General Assembly's goal of promoting proper safety belt use. *Anderson,* 953 P.2d at 1290.

In addition to subjecting drivers and front seat passengers to a penalty for non-use of a safety belt, the General Assembly allows evidence of a failure to comply with the provisions of subsection (2) to be admissible for purposes of mitigation. § 42–4–237(7). Hence:

> By decreasing the amount of pain and suffering damages in proportion to injuries attributable to seat belt nonuse, the General Assembly sent a signal to drivers and front seat passengers to buckle up.

*Anderson,* 953 P.2d at 1290. This subsection again reflects the General Assembly's intent to create a law which would serve to increase safety belt use.

Finally, subsection (8) offers yet another example of the General Assembly's intent in establishing the safety belt systems mandatory use law. In this subsection, the General Assembly requires:

> The office of transportation safety in the department of transportation shall continue its program for public information and education concerning the benefits of wearing safety belts and shall include within such program the requirements and penalty of this section.

§ 42–4–237(8). Such language reveals the General Assembly's desire to educate the public about the importance of safety belt use in order to further its ultimate goal of increasing public safety through the decrease of motor vehicle accident deaths and injuries due to the non-use of safety belts.

The General Assembly's intent in enacting section 42–4–237 is apparent when reading the statutory subsections as a whole. The General Assembly endeavored to create law that would promote and increase safety belt use in a manner consistent with federal motor vehicle safety standards. Given this intent, we find it consistent that the General Assembly intended to require that the driver of an automobile and every front seat passen-

ger in a vehicle that has been equipped with both a lap and a shoulder belt pursuant to federal motor vehicle safety standards wear both the lap and the shoulder belt.

## III.

## CONCLUSION

We hold that the plain and unambiguous language of section 42–4–237(2) requires that drivers and front seat passengers of automobiles that have been equipped with a lap and a shoulder belt pursuant to federal motor vehicle safety standards must wear both the lap belt and the shoulder belt in order to comply with the statute. The court of appeal's judgment is affirmed. This case is remanded to the court of appeals to return the case to the trial court for a new trial in accordance with: 1) the opinion of the court of appeals on other issues; and 2) this opinion.

Justice COATS dissents.

Justice COATS dissenting:

The majority rests its holding on the assertion that the statutory mandate to wear "a fastened safety belt" while operating a motor vehicle plainly means that the operator must wear two separate and independently fastened safety belts whenever they are available. Because I consider this interpretation of not only the words "a fastened safety belt," but also the term "plain meaning," to be so contrived as to literally cry out for some challenge, I respectfully dissent.

On one point the majority and I agree: The language of the statute is plain and unambiguous, *see* maj. op. at 511, and therefore sets forth the legislative intent without reliance upon rules of statutory interpretation, *see* maj. op. at 508. We simply have diametrically opposed understandings of what that plain meaning is. For my part, a requirement that one wear a fastened safety belt, upon pain of both adverse evidentiary and penal consequences, is satisfied when one fastens, as designed, a single safety belt, no matter how many other safety belts might have been available for fastening. While I readily accept that it may be due to my own

shortcomings, I confess that I am at a loss to comprehend how a belt, which the majority concedes is singular, becomes plural when modified by the word "safety." It seems clear enough that such an adjective would normally be understood as describing the nature of the belt—not the number of belts—at issue.

I also readily concede that the plain meaning of a word or phrase does not exist apart from the context in which it is used and any special definition it is given. But the term "safety belt" is not specially defined by the legislature or otherwise used as a term of art. It must therefore be accorded its commonly understood meaning. And taken in context, "safety belt" is juxtaposed, in the same sentence, to a "safety belt system," which is expressly defined either as a single belt or a combination of belts conforming to federal safety standards. Although the statutory mandate carrying a sanction for non-compliance is triggered only by driving a vehicle with such a "safety belt system," the General Assembly has not required, as it could easily have done, that the entire safety belt system, or even some particular portion of it, be used in any particular way. Rather it specifically requires only that the driver of a vehicle with a safety belt system "wear a fastened safety belt."

As the majority notes, the statute not only prescribes a duty of care but defines a traffic infraction, with a penal sanction for its violation. As a matter of fundamental fairness, such a proscription must be drawn with sufficient clarity and specificity to permit individuals to conform their conduct to its dictates. Particularly in this context, I fear that the majority's explanation that the plain meaning of "one" is really "two" sounds, at least on its face, so outlandish as to evoke the suggestion of legal artifice and undermine confidence in our protestations that we are merely acknowledging the only reasonable meaning of, and therefore the legislative intent embodied in, the statutory language.

Because I believe the clear and unambiguous language chosen by the General Assembly requires only one fastened safety belt, and cannot be reasonably understood to require independently fastened, separate lap and shoulder belts, I respectfully dissent.