The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 9, 2026

## 2026COA26

**No. 25CA0071, *OnePutt Liquors, LLC v. Colorado Department of Revenue* — Colorado Liquor Code — Retail Liquor Store License — Additional Licenses**

Generally, the owner of a retail liquor store license may not own an interest in any other retail liquor store license. In 2016, the General Assembly adopted an exception that allows "[a]n owner, part owner, shareholder, or person interested directly or indirectly in . . . a retail liquor store licensed on or before January 1, 2016, and whose license holder is a Colorado resident" to purchase a limited number of additional retail liquor store licenses. § 44-3-409(4)(b)(III), C.R.S. 2025.

For the first time in a published opinion, a division of the court of appeals addresses this exception. The division concludes that the exception does not apply to a person who purchases a retail liquor store that was licensed by another on or before January

1, 2016, even though the purchaser continued to operate a liquor store at the same location pursuant to a temporary permit and thereafter under the purchaser's own license.

Court of Appeals No. 25CA0071
City and County of Denver District Court No. 23CV32169
Honorable Adam J. Espinosa, Judge

OnePutt Liquors, LLC,

Plaintiff-Appellant,

v.

Colorado Department of Revenue, Heidi Humphries, in her official capacity as
Executive Director of the Colorado Department of Revenue and State Licensing
Authority, and Liquor Enforcement Division,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

Announced April 9, 2026

---

Clark Hill PLC, Michael J. Laszlo, Boulder, Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Alan Call, Senior Assistant Attorney
General, Reed Morgan, Senior Assistant Attorney General, Hiwot Covell, Senior
Assistant Attorney General, Denver, Colorado, for Defendants-Appellees

¶ 1     Generally, the owner of a retail liquor store (RLS) license may not own an interest in any other RLS licenses.  This appeal arises from an agency order confirming that plaintiff, OnePutt Liquors, LLC (OnePutt), is not eligible to obtain a second RLS license under the exception contained in section 44-3-409(4)(b)(III), C.R.S. 2025.  This is the first reported Colorado appellate case to interpret this exception.

¶ 2     After purchasing an existing RLS, OnePutt submitted its request for a position statement from the Liquor Enforcement Division (LED) addressing OnePutt's eligibility to purchase additional RLS licenses.  The LED concluded that OnePutt is not eligible.  OnePutt then filed a petition for a declaratory order with the State Licensing Authority (SLA) addressing the same issue.[1]  Consistent with the LED's decision, the SLA concluded that OnePutt is not eligible to purchase additional RLS licenses under the statute.  OnePutt brought an action in the district court against defendants, the Colorado Department of Revenue (Department), the

---

[1] Section 24-4-105(11), C.R.S. 2025, allows a party to petition an agency for a declaratory order to remove uncertainties as to any rule or statute as it relates to the petitioning party.

Department's Executive Director and SLA, and the LED, appealing the SLA's decision. The district court affirmed the SLA's order.

¶ 3    OnePutt now appeals. We affirm the district court's judgment.

## I.    Background

¶ 4    In or about 2000, Gloria Deschamp began operating an RLS (the Carbondale Store) located on El Jebel Road in Carbondale.[2] Deschamp held RLS license No. 04-46530-000 (the Deschamp license). The Deschamp license permitted Deschamp to sell liquor at the premises for consumption off the premises. Deschamp continued to operate the Carbondale Store for approximately two decades. In late 2020, OnePutt, a newly formed limited liability company, purchased the Carbondale Store. Contemporaneous with the purchase, OnePutt obtained a temporary permit from the LED to continue operating under the Deschamp license while it awaited a decision on its separate license application. On January 11, 2021, the LED issued OnePutt a new RLS license, under assigned

---

[2] The parties and the district court refer to OnePutt by its trade name of El Jebel and sometimes refer to the Carbondale Store by the same name. To maintain clarity regarding the names of the licensees and establishments involved in this case, we refer to OnePutt by its legal entity name and the liquor store by the generic descriptor Carbondale Store.

2

license No. 03-14216, to operate an RLS at the same premises as the Carbondale Store.

¶ 5     The dispute comes down to the issuance date of OnePutt's RLS license.  To understand why the date is important, we briefly discuss the legislative history of section 44-3-409(4)(b)(III).

¶ 6     In 2016, the General Assembly enacted S.B. 16-197, part of which was ultimately codified in section 44-3-409.  *See* Ch. 365, sec. 13, § 12-47-407, 2016 Colo. Sess. Laws 1534-36; Ch. 152, sec. 2, § 44-3-409, 2018 Colo. Sess. Laws 1005-07 (relocating law related to the regulation of alcohol from title 12 to new title 44). The legislation was passed, in part, because of potential ballot measures that — if adopted — would allow the sale of full strength alcoholic beverages in larger chain stores, like grocery stores and convenience stores.  The General Assembly recognized that the ballot measures would significantly impact the operations of currently licensed RLSs, most of which were small, local businesses.  Under the regulatory scheme that existed prior to the new legislation, owners of an RLS — including shareholders, partners, or other persons interested directly or indirectly in an RLS license — could not own, in whole or in part, or be directly

interested in, another business that owned an RLS license. S.B. 16-197 was intended to ameliorate the perceived unfair impact that the existing restrictions would have on entities that had obtained their RLS license before the anticipated passage of the ballot measures.

¶ 7 Under section 44-3-409(4)(a), if a person has an ownership interest in, or is "interested directly or indirectly" in, an RLS that was licensed after January 1, 2016, they are not eligible to obtain additional RLS licenses. On the other hand, if the person obtained their RLS license on or before January 1, 2016, they are eligible to obtain a limited number of additional RLS licenses. § 44-3-409(4)(b)(III).

¶ 8 OnePutt maintains that when it purchased the Carbondale Store, it also purchased the Deschamp license. Because the Deschamp license was issued in about 2000, whoever held the Deschamp license — if it was still effective — would be eligible under section 44-3-409(4)(b)(III) to acquire additional RLS licenses.

¶ 9 In its request for a position statement from the LED, OnePutt indicated that it or one or more of its principals desired to have a financial interest in an additional RLS license. OnePutt's request

implicitly recognized that under the historical and existing RLS licensing schemes, the owner or principal of an RLS license generally cannot own or have an interest in a different RLS.

¶ 10     Applying the amended versions of the relevant statutes, the LED and eventually the SLA and district court all concluded that OnePutt was not the owner of an RLS license that was issued on or before January 1, 2016, and therefore OnePutt was not eligible to purchase additional RLS licenses under section 44-3-409(4)(b)(III). It is this conclusion that OnePutt challenges on appeal.

## II.     Discussion

¶ 11     To address OnePutt's arguments, we must first determine whether section 44-3-409(4)(b)(III) is ambiguous.  Each party argues that the statute is unambiguous and that its construction dictates a conclusion in its favor.  If the statute is unambiguous, as the parties contend, we must determine if the SLA and district court applied it correctly.  If the statute is ambiguous, we must interpret the ambiguous language and then determine whether it permits OnePutt or its principals to purchase additional RLS licenses.

## A. Standard of Review

¶ 12    In an appeal under C.R.C.P. 106(a)(4), courts consider whether the agency, based on the evidence before it, abused its discretion or exceeded its jurisdiction. "Because an appellate court sits in the same position as the district court when reviewing an agency's decision under [Rule] 106(a)(4), appellate review of the district court's decision is de novo." *Alward v. Golder,* 148 P.3d 424, 428 (Colo. App. 2006). We also review matters of statutory interpretation de novo. *Nieto v. Clark's Mkt., Inc.,* 2021 CO 48, ¶ 12.

¶ 13    When interpreting a statute, "we seek to ascertain and give effect to the General Assembly's intent." *Elder v. Williams*, 2020 CO 88, ¶ 18. We use the plain and ordinary meanings of words and phrases, looking "to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results." *Id.*

¶ 14    A statute is ambiguous when it is reasonably susceptible of multiple interpretations. *Colo. Oil & Gas Conservation Comm'n v. Martinez,* 2019 CO 3, ¶ 19. A statute is not ambiguous simply

6

because the parties offer differing interpretations of its terms. *Morley v. United Servs. Auto. Ass'n*, 2019 COA 169, ¶ 16. Rather, an ambiguity exists only if both parties' interpretations are reasonable. *Martinez*, ¶ 19. An alternative interpretation is unreasonable if it would lead to an illogical or absurd result. *Tucker v. Volunteers of Am. Colo. Branch*, 211 P.3d 708, 711 (Colo. App. 2008) ("We avoid statutory interpretations leading to absurd or illogical results.").

¶ 15    If the statute is ambiguous, we may look to, among other things, the legislature's intent, the circumstances surrounding the statute's adoption, the administrative construction of the statute, and the possible consequences of different interpretations. *Id.*; *see also* § 2-4-203, C.R.S. 2025.

## B.    Applicable Law

¶ 16    Article 3 of title 44 is the Colorado Liquor Code. § 44-3-101, C.R.S. 2025. Section 44-3-301, C.R.S. 2025, addresses the issuance of licenses under article 3. Section 44-3-303, C.R.S.

2025,[3] addresses temporary permits and the transfer of ownership of a license.

¶ 17    Section 44-3-409(4), which controls the resolution of this appeal, addresses rules and definitions applicable to the issuance of RLS licenses:

> (a) Except as provided in subsection (4)(b) of this section, it is unlawful for any owner, part owner, shareholder, or person interested directly or indirectly in a retail liquor store to conduct, own either in whole or in part, or be directly or indirectly interested in any other business licensed pursuant to this article 3.
>
> (b) An owner, part owner, shareholder, or person interested directly or indirectly in a retail liquor store may have an interest in:
>
> (I) An arts license granted under this article 3;
>
> (II) An airline public transportation system license granted under this article 3;
>
> (III) For a retail liquor store licensed on or before January 1, 2016, and whose license holder is a Colorado resident, additional retail liquor store licenses as follows, but only if the premises for which a license is sought satisfies the distance requirements specified in subsection (1)(a)(II) of this section:

---

[3] Section 44-3-303 was amended subsequent to the agency and district court decisions, but the amendments did not affect the portions of the statute relevant to this dispute.  Therefore, we refer to the 2025 version of section 44-3-303.

8

(A) On or after January 1, 2017, and before January 1, 2022, one additional retail liquor store license, for a maximum of up to two total retail liquor store licenses;

(B) On or after January 1, 2022, and before January 1, 2027, up to two additional retail liquor store licenses, for a maximum of three total retail liquor store licenses; and

(C) On or after January 1, 2027, up to three additional retail liquor store licenses, for a maximum of four total retail liquor store licenses.

## C.    Analysis

### 1.    RLS Licenses Issued on or Before January 1, 2016

¶ 18    Section 44-3-409(4)(b)(III) contains three requirements for an owner seeking to acquire additional RLS licenses: The owner must (1) already own or have an interest in an RLS license; (2) be a Colorado resident; and (3) own an RLS licensed on or before January 1, 2016.  It is undisputed that OnePutt meets the first two requirements; OnePutt is licensed to operate an RLS at the Carbondale Store location, and OnePutt is a Colorado resident for the purposes of the statute.  The crux of the dispute, therefore, is whether OnePutt owns an RLS "licensed on or before January 1, 2016."  § 44-3-409(4)(b)(III).

¶ 19    The language of section 44-3-409(4) itself is seemingly clear and unambiguous: If the owner does not own an RLS license issued on or before January 1, 2016, they are not eligible to obtain a second RLS license.  And it is undisputed that OnePutt's license to operate the Carbondale Store was not issued until 2021, after it purchased the Carbondale Store from Deschamp.

¶ 20    Based on a plain reading of the statute's language, it appears that the LED, SLA, and district court were correct: OnePutt is not permitted to own additional RLS licenses.  But, as it did below, OnePutt argues on appeal that the plain language of the statute should be interpreted differently.  OnePutt makes a variety of arguments to support its interpretation.

2.    OnePutt's Reading of Section 44-3-409(4)(b)(III)

¶ 21    Before turning to OnePutt's specific contentions, it is useful to review the general principles applicable to the issuance of an RLS license in Colorado.  There are three essential factors that must be evaluated when reviewing an application for an RLS license: who will be licensed to sell liquor, where will they be allowed to sell it, and how long can they do so.  Reflecting these requirements, section 44-3-301(4)(a) states that an issued license "shall specify

10

the date of issuance, the period which is covered, the name of the licensee, [and] the premises . . . licensed."

¶ 22    Section 44-3-409(1)(a) begins with the principle that an RLS license "shall be issued to persons." A person is defined as "a natural person, partnership, association, company, corporation, or organization or a manager, agent, servant, officer, or employee thereof." § 44-3-103(35), C.R.S. 2025. And the Colorado Liquor Code defines premises as "a distinct and definite location, which may include a building, a part of a building, a room, or any other definite contiguous area." § 44-3-103(38)(a).

¶ 23    These details of duration, who, and where matter because

> [e]ach license issued under this article 3 . . . of this title 44 is separate and distinct. It is unlawful for any person to exercise any of the privileges granted under any license other than the license the person holds or for any licensee to allow any other person to exercise the privileges granted under the licensee's license, except as provided in [sections not relevant to this case]. A separate license must be issued for each specific business or business entity and each geographic location . . . .

§ 44-3-301(3)(a)(I).

¶ 24    Section 44-3-409(4)(a) articulates the general rule that governed Colorado's liquor licensing process until the passage of

11

S.B. 16-197: "Except as provided in [section 44-3-409(4)(b)], it is unlawful for any owner, part owner, shareholder, or person interested directly or indirectly in a retail liquor store" to own or be interested in "any other business licensed pursuant to this article 3." Thus, the statute begins by restating the traditional prohibition against owning more than one RLS.

¶ 25 Subsection (4)(b), however, grants an exception to the general prohibition. It begins by identifying two broad classes of licenses issued under article 3 that are not subject to the prohibition of subsection (4)(a): an arts license and an airline public transportation system license. § 44-3-409(4)(b)(I)-(II). So all owners of an RLS, regardless of when the corresponding license to operate the RLS was issued, may also own or have an interest in an arts license and airline public transportation system license.

¶ 26 The next subsection — (4)(b)(III) — articulates the narrow exception authorized by S.B. 16-197. It carves out a group of RLS licensees — Colorado residents who own "a retail liquor store licensed on or before January 1, 2016." OnePutt contends that this language means that anyone who now owns — or who may own in the future — an RLS that was first licensed at the same location on

or before January 1, 2016, is entitled to apply for additional licenses under section 44-3-409(4)(b)(III).  Acknowledging an inherent assumption in this argument, OnePutt asserts that it qualifies for the exception based on the Carbondale Store because the RLS "establishment was first licensed" before 2016.

¶ 27     As OnePutt correctly notes, subsection (4)(b)(III) uses the phrase "retail liquor store," which the Colorado Liquor Code defines as

> an establishment engaged only in the sale of malt, vinous, and spirituous liquors in sealed containers for consumption off the premises . . . , but only if the annual gross revenues from the sale of nonalcohol products do not exceed twenty percent of the retail liquor store establishment's total annual gross sales revenues.

§ 44-3-103(48).  From there, OnePutt argues that because it now owns the RLS located on the same premises as the store that was owned by Deschamp, it owns the establishment first licensed before January 1, 2016.  But an establishment — that is, an RLS operated on the physical premises — is not issued a license.  Rather, licenses are issued to persons who are then permitted to operate an RLS on a designated premises.  § 44-3-409(1)(a)(I).  Thus, it's the owner of

13

the license who is "licensed," as that phrase is used under section 44-3-409(4)(b)(III), not the establishment. *See* Merriam-Webster Dictionary, https://perma.cc/PP69-NRXR (defining licensed as "having a valid license required to engage in a particular business, occupation, or activity").

¶ 28 The owner of the establishment that operated the RLS at the Carbondale Store before January 1, 2016, was Deschamp. It is undisputed that, aside from OnePutt's purchase of the Carbondale Store in 2020, OnePutt and Deschamp have never been in a business relationship with each other. Deschamp owned and operated that establishment until the sale. In 2021, OnePutt obtained a temporary license and then a permanent license to run its establishment on the same premises. The separate establishments on the same premises were owned and operated by different licensees who were issued different licenses. Thus, OnePutt's current ownership of the premises does not permit it to exercise the rights granted to those who owned a license issued in connection with that premises on or before January 1, 2016.

¶ 29 Relatedly, we reject OnePutt's argument that an establishment is simply a physical location. Merriam-Webster Dictionary defines

14

an establishment as "a place of business or residence with its furnishings and staff" or "a public or private institution."  Merriam-Webster Dictionary, https://perma.cc/4X4S-KNK8; *see also* Collins Dictionary, https://perma.cc/864F-G8X3 ("An establishment is a shop, business, or organization occupying a particular building or place.").  OnePutt's argument focuses solely on the "premises" or "location" of where the RLS establishment is operated, to the exclusion of the business that runs the establishment.

¶ 30    The irrational nature of this argument is illustrated by substituting the term "premises" (or "location") for "establishment" as used in the statute.  Under OnePutt's interpretation, the definition of an RLS would read as follows: a "[premises/location] engaged only in the sale of malt, vinous, and spirituous liquors in sealed containers for consumption off the premises . . . but only if the annual gross revenues from the sale of nonalcohol products do not exceed twenty percent of the retail [premises'/location's] total annual gross sales revenues."  *See* § 44-3-103(48).  This results in an absurdity because a premises (or location) does not engage in the sale of liquor or collect gross revenues.  Moreover, this interpretation would use the term "premises" in two incompatible

15

ways. *See Carlson v. Ferris*, 85 P.3d 504, 509 (Colo. 2003) ("[T]he use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings.").

¶ 31    Substituting the word "business" in the statutory definition of RLS brings the point home: a "[business] engaged only in the sale of malt, vinous, and spirituous liquors in sealed containers for consumption off the premises . . . but only if the annual gross revenues from the sale of nonalcohol products do not exceed twenty percent of the [business's] total annual gross sales revenues." *See* § 44-3-103(48).

¶ 32    This harmonious reading demonstrates that the term "establishment," as used in the Colorado Liquor Code's definition of an RLS, refers to the business that operates the liquor store. *See* § 44-3-103(48). It also gives different and logical meaning to the General Assembly's use of the terms "establishment" and "premises" in the definition of an RLS. *See Ferris*, 85 P.3d at 509.

¶ 33    In sum, Deschamp was issued a license to operate an RLS establishment at the premises prior to 2016, and she continued to operate that establishment until her license and related establishment terminated in late 2020. Since 2021, OnePutt has

owned an RLS license to operate its establishment at the same premises. But OnePutt does not own a license to a retail liquor store that was licensed prior to January 1, 2016.[4]

¶ 34     In our judgment, this conclusion is mandated by the plain and ordinary meaning of the language used in section 44-3-409(4)(b)(III), including the related Colorado Liquor Code provisions. *See Elder*, ¶ 18. Thus, the interpretation gives harmonious effect to the various provisions of the entire statutory scheme. *See id.* And this construction avoids absurd and illogical results. *See id.*

¶ 35     Moreover, the interpretation urged by OnePutt would allow the exception in section 44-3-409(4)(b)(III) to continue in perpetuity. Under OnePutt's interpretation, every subsequent owner who holds an RLS license to operate an RLS on the premises where the Carbondale Store is located could gain additional RLS licenses under section 44-3-409(4)(b)(III). But, as previously explained, these additional licenses were intended to benefit only those persons who were issued their RLS license under the licensing

---

[4] OnePutt's argument is not advanced by its reliance on *City & County of Denver v. Gushurst,* 210 P.2d 616 (Colo. 1949). *Gushurst* does not discuss whether an establishment should be interpreted as a location, much less suggest such an interpretation.

17

statutes that existed prior to 2016.  Because the statutory argument advanced by OnePutt would create an absurd result, we conclude that it is not a reasonable alternative and therefore does not create an ambiguity.  *See Elder*, ¶ 18 ("A statute is ambiguous when it is reasonably susceptible of multiple interpretations.").

¶ 36    But even assuming, for the sake of argument, that OnePutt's interpretation of section 44-3-409(4)(b)(III) creates an ambiguity, the legislative history confirms our interpretation.  *See Nicola v. City of Grand Junction*, 2023 COA 111, ¶ 54 ("Because our interpretation is based on the plain, unambiguous language of the statute, we need go no further, *see Elder*, ¶ 18, but our interpretation also furthers the end to be achieved by the statute and avoids absurd results, demonstrating that it is the only reasonable interpretation.").

¶ 37    Senator Pat Steadman, one of the sponsors of S.B. 16-197, through which section 44-3-409(4)(b)(III) was created, explained that the legislation was intended to protect the small businesses that were operating under the pre-2016 Colorado Liquor Code, "particularly those that are licensed to sell retail liquor today." Hearings on S.B. 16-197 before the S. Bus., Lab. & Tech. Comm., 70th Gen. Assemb., 2d Reg. Sess. (May 6, 2016).  Senator

Steadman also stated that the bill contained "protections built in for the small businesses that are currently retail liquor licensees, retail liquor stores." *Id.*

¶ 38   As evidenced by Senator Steadman's statements, the purpose of section 44-3-409(4)(b)(III) was to level the playing field for the small business that bought an RLS license prior to January 1, 2016, by allowing them to compete under the new regulatory system.  The intent of this legislation was not, as OnePutt argues, to create a means by which subsequent RLS license holders, who have purchased with full knowledge of the existing rules, can exploit the benefit intended for those who obtained their RLS license prior to 2016.

¶ 39   Finally, our reading of section 44-3-409(4)(b)(III) is consistent with the Department's reading.  "Although we aren't required to do so, we may defer to an agency's interpretation of the statute it's charged with administering if its interpretation is reasonable." *Colo. Educ. Ass'n v. Colo. State Bd. of Educ.*, 2025 COA 56, ¶ 13.  As demonstrated by the foregoing analysis, we reached our conclusion independently; nonetheless, the agency interpretation of section 44-3-409(4)(b)(III) is consistent with ours.

### 3. OnePutt's Reading of Section 44-3-303

¶ 40 For similar reasons, we reject OnePutt's argument that the "pre-2016 RLS license never ceased to exist and is now owned by [OnePutt]." In support of this contention, OnePutt argues that section 44-3-303 allows a licensee to transfer their existing RLS license in its entirety to a new license owner if that owner operates an RLS at the same physical location as the previous license owner. Under this reading, OnePutt contends that it is a "retail liquor store licensed on or before January 1, 2016." We are not persuaded.

¶ 41 Section 44-3-303 addresses two related, but different, issues. First, section 44-3-303 permits an applicant to pursue a liquor license through a transfer of ownership of an existing RLS. This allows the applicant to obtain a license to operate an RLS on the same premises that was previously approved when the prior owner applied for their RLS license. § 44-3-303(1)(c)(I).

¶ 42 When applying for a license to operate an RLS where there is not already a liquor store, the local licensing authority may require a public hearing to allow community members to weigh in on the appropriateness of operating an RLS at the specific premises identified in the application. § 44-3-311(1), C.R.S. 2025. In this

manner, the local community has a chance to be heard concerning the need for an RLS at this particular location, and whether an RLS is appropriate for the neighborhood. § 44-3-311(5)(a)-(d). In addition to this site-specific evaluation, the licensing authority also evaluates the character and qualifications of the license applicant. § 44-3-307, C.R.S. 2025.

¶ 43 Through the transfer of ownership process, the license applicant still needs to satisfy the character evaluation, but the applicant does not need to readdress the appropriateness of the premises for an RLS because that was evaluated when the RLS license was issued to the prior applicant. § 44-3-303(1)(c)(I).

¶ 44 Second, and relatedly, section 44-3-303 addresses the issuance of a temporary permit, which allows a new applicant who is purchasing an existing RLS to continue to sell liquor at the same location as the prior licensee until the new RLS license is issued. *See* § 44-3-303(3)(c) ("The application for a temporary permit shall be filed no later than thirty days after the filing of the application for transfer of ownership and shall be accompanied by a temporary permit fee not to exceed one hundred dollars."); § 44-3-303(3)(d). The purpose of the temporary permit is to allow the prospective

purchaser of an RLS to continue the business operations conducted under the old license pending completion of the purchase and sale process, not to transfer an existing license to a different person.

¶ 45 Thus, the statute begins with a reminder that "[n]o license granted under the provisions of this article 3 . . . shall be transferable except as provided in this subsection (1)." § 44-3-303(1)(a). The only exception to this broad rule that does not require the issuance of a new license is that

> [w]hen a license has been issued to spouses, partners in a civil union, or general or limited partners, the death of a spouse or partner does not require the surviving spouse or partner to obtain a new license. All rights and privileges granted under the original license continue in full force and effect as to the survivors for the balance of the license period.

§ 44-3-303(1)(b). In all other situations, the new owner must apply for the issuance of a new license. And like a typical application, the end result of a successful transfer of ownership is the issuance of a new license, to a new licensee, under a new license number, and for a new term. The only thing that remains constant is that the new license authorizes the operation of an RLS at the same location as the old license did.

22

¶ 46    Contrary to OnePutt's argument, which is grounded in section 44-3-303(1)(c)'s admittedly confusing use of the phrase "transfer of ownership" and section 44-3-303(2)'s use of the phrase "transfer the ownership of the license," the transfer process does not result in a transfer of the original RLS license to the new licensee. As previously discussed, this reality is evidenced by the fact that an application for a transfer of ownership results in a new license, license number, licensee, and term.[5]

¶ 47    Even if we assume, without deciding, that the provisions of section 44-3-303 — either standing alone or when read in connection with section 44-3-409(4)(b)(III) — create any ambiguity with respect to the proper interpretation of section 44-3-409(4)(b)(III), we resolve the assumed ambiguity in favor of the Department's interpretation.

¶ 48    Particularly in areas as complex and nuanced as the issuance of RLS licenses under the Colorado Liquor Code, the Department's expertise and perspective when interpreting the Code and its related

---

[5] We do not address OnePutt's argument, raised for the first time in its reply brief, concerning the specialized retail inventory and license transfers addressed in section 44-3-409(6)-(7), C.R.S. 2025. *See Peña v. Am. Fam. Mut. Ins. Co.*, 2018 COA 56, ¶ 21 n.4.

regulations are instructive. *See El Paso Cnty. Bd. of Equalization v. Craddock*, 850 P.2d 702, 705 (Colo. 1993) ("Administrative interpretations are most useful to the court when the subject involved calls for the exercise of technical expertise which the agency possesses and when the statutory language is susceptible to more than one reasonable interpretation."). The Department's construction gives effect to the legislative intent behind section 44-3-409(4)(b)(III) and does so in a manner that is consistent and harmonious with the basic tenets of the Colorado Liquor Code. *See Elder*, ¶ 18.

¶ 49 The General Assembly's clear intent is that each license remain "separate and distinct." § 44-3-301(3)(a)(I) ("Each license issued under this article 3 . . . is separate and distinct," and it is unlawful for any person to "exercise any of the privileges granted under any license other than the license the person holds or for any licensee to allow any other person to exercise the privileges granted under the licensee's license."); *see* § 44-3-303(1)(a) ("No license granted under the provisions of this article 3 . . . shall be transferable except as provided in this subsection (1) . . . .").

24

Neither section 44-3-303 nor section 44-3-409(4)(b)(III) purports to violate that principle.

¶ 50   Applying these principles, we conclude that simply because OnePutt currently operates an RLS at the Carbondale Store, where Deschamp previously operated her RLS, does not mean that OnePutt obtained Deschamp's RLS license when it purchased the Carbondale Store. That OnePutt, prior to the issuance of its permanent license, initially operated an RLS at the Carbondale Store with a temporary permit issued under the Deschamp license does not alter our conclusion. And that conclusion does not change simply because OnePutt chose to continue operating the Carbondale Store under the same trade name — El Jebel — that Deschamp used for her RLS.

¶ 51   As the district court correctly wrote in its order, "[a] key principle of the liquor statutes is individuality." OnePutt was able to obtain a temporary permit to sell the inventory remaining from Deschamp's RLS establishment. OnePutt thereafter obtained its own license, well after the 2016 cutoff provided in the statute.

¶ 52    For these reasons, the district court did not err by affirming the SLA's conclusion that OnePutt does not qualify for additional RLS licenses under section 44-3-409.

## III.    Disposition

¶ 53    The district court's judgment is affirmed.

JUDGE FREYRE and JUDGE BROWN concur.